Quarles & Brady LLP
Emily M. Feinstein, WI Bar No. 1037924
emily.feinstein@quarles.com
33 East Main Street,
Suite 900
Madison, WI  53703
Telephone: 608.251.5000
Facsimile:  608.251.4912

Patrick J. Proctor-Brown, WI Bar No. 1091326
patrick.proctor-brown@quarles.com
411 East Wisconsin Avenue,
Suite 2400
Milwaukee, WI 53202
Telephone:  414.277.5611
Facsimile:   414.978.8906

Attorneys for Plaintiff
FIRSTSOURCE SOLUTIONS USA, LLC

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIRSTSOURCE SOLUTIONS USA, LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>TULARE REGIONAL MEDICAL CENTER,<br><br>                    Defendant. | Case No.  1:15-cv-01136-DAD-EPG<br><br>**[DISCOVERY MATTER]**<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SANCTIONS** |

QUARLES & BRADY LLP
ATTORNEYS AT LAW
MILWAUKEE

QB\42948330.1                                         i                     PLAINTIFF'S NOTICE OF MOTION
AND MOTION FOR SANCTIONS
1:15-CV-01136-DAD-EPG

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................... 1

II.     FACTS ........................................................................................................... 1

        A.    TRMC DID NOT IDENTIFY OR PRODUCE DOCUMENTS
              SUPPORTING ITS CLAIM FOR DAMAGES ................................... 3

        B.    TRMC SOUGHT AND RECEIVED EXTRAORDINARY EX
              PARTE RELIEF ................................................................................. 3

        C.    TRMC DID NOT WORK DILIGENTLY IN THE EXTENDED
              DISCOVERY PERIOD ...................................................................... 5

        D.    TRMC BELATEDLY PRODUCED PAYOR CONTRACTS
              WITHOUT SAYING HOW THEY RELATE TO ITS CLAIMS ....... 5

        E.    TRMC STILL DOES NOT KNOW WHETHER IT HAS THE
              "CRUCIAL" DOCUMENTS ............................................................. 6

        F.    TRMC HAS NOT ACTED WITH IN GOOD FAITH IN
              DISCOVERY ..................................................................................... 7

III.    ARGUMENT ................................................................................................. 8

        A.    The First and Second Factors Favor Sanctions.................................... 9

        B.    The Third Factor Favors Sanctions..................................................... 10

        C.    TRMC Cannot Save Its Claims By Relying on the Fourth Factor ..... 11

        D.    Less Drastic Alternatives Are Not Likely To Induce TRMC to
              Comply ............................................................................................... 12

IV.     DISMISSAL IS APPROPRIATE HERE BECAUSE TRMC IS
        SOLELY AT FAULT FOR ITS CONDUCT ................................................. 12

V.      CONCLUSION ............................................................................................. 14

QUARLES & BRADY
LLP
ATTORNEYS AT LAW
MILWAUKEE

QB\42948330.1                                    i

**TABLE OF AUTHORITIES**

Cases

*Anheuser-Busch, Inc. v. Natural Beverage Distributors*,
69 F.3d 337 (9th Cir. 1995)..................................................................................12

*Berna v. Powell*,
2016 WL 6693505 (E.D. Cal. Nov. 14, 2016)................................9, 10, 11, 12

*Computer Task Group, Inc. v. Brotby*,
364 F.3d 1112 (9th Cir. 2004)..............................................................................9

*Henry v. Gill Industries, Inc.*,
983 F.2d 943 (9th Cir. 1993).............................................................................13

*In re Exxon Valdez*,
102 F.3d 429 (9th Cir. 1996).........................................................................11, 12

*In re Phenylpropanolamine (PPA) Prods. Liability Litig.*,
460 F.3d 1217 (9th Cir. 2006)............................................................................11

*Pagtalunan v. Galazza*,
291 F.3d 639 (9th Cir. 2002)................................................................................9

*Saunders v. Cty of San Bernardino*,
2015 WL 8769979 (C.D. Cal. Dec. 14, 2015)...................................................10

QUARLES & BRADY
LLP
ATTORNEYS AT LAW
MILWAUKEE

QB\42948330.1

ii

PLAINTIFF'S NOTICE OF MOTION
AND MOTION FOR SANCTIONS
1:15-CV-01136-DAD-EPG

1

2    **I.      INTRODUCTION.**

3           Firstsource asks this Court to strike TRMC's answer, affirmative defenses

4    and counterclaim under Rule 37 for its failure to produce any evidence supporting

5    its affirmative defenses and counterclaims. As a preliminary matter, discovery is

6    now closed and TRMC has failed to identify even one account to support its claims.

7    More concerning, over and over again TRMC has made representations to

8    Firstsource and this Court about its willingness to produce the documents it

9    identified as "crucial" to its claims and, over and over again, TRMC has failed to

10   produce those documents. TRMC has now informed Firstsource that it does not

11   even know if it has or can access some of those "crucial" documents, months after

12   TRMC told this Court it was working to produce them in two-three weeks.

13          TRMC should be sanctioned because it failed to identify this information on

14   its own, failed to produce it in response to discovery requests, failed to produce it

15   after requesting and receiving additional time to do so, and now claims it may not

16   even have some of this information. Firstsource has waited long enough for TRMC

17   to figure out what documents it has and produce them. Firstsource should not have

18   to wait any longer.

19

20   **II.     FACTS.**

21          Firstsource brought a simple collection suit against TRMC seeking to be paid

22   for services rendered. Under the Parties' contract, TRMC was to pay Firstsource a

23   small percentage of the revenue Firstsource collected for TRMC.  At some point,

24   however, TRMC stopped paying Firstsource, despite the fact that it received the

25   revenue that was the fruit of Firstsource's labor.  In response to the Complaint,

26   TRMC raised affirmative defenses and a counterclaim suggesting that any amounts

27   it owes to Firstsource should be offset by $6,500,000–$7,000,000 in "lost revenue."

28

QUARLES & BRADY
LLP
ATTORNEYS AT LAW
MILWAUKEE

QB\42948330.1                              --1--                    PLAINTIFF'S NOTICE OF MOTION
                                                                   AND MOTION FOR SANCTIONS
                                                                   1:15-CV-01136-DAD-EPG

1   TRMC claims that Firstsource did not exercise commercially reasonable efforts to

2   collect this "lost revenue," damaging TRMC.

3       Since raising these allegations *nearly fourteen months ago*, TRMC has failed

4   to produce *any* admissible evidence to support them and now concedes the

5   documents it has produced are inaccurate, incomplete, or otherwise erroneous.

6   (Feinstein Decl., ¶¶ 7-9, Ex. E.)

7       Worse, TRMC now states that it does not know whether it has or can access

8   its own the billing program, even though it has continually promised to produce

9   data/documents located on that system. (Feinstein Decl., ¶ 15, *Compare* Doc. No.

10  35, at 8:5–13.) At the same time, TRMC is now seeking 90 days to produce the

11  documents it previously told this Court could be produced two to three weeks from

12  September 20, 2016. (*Compare* Doc. No. 35-2, Bryant Decl., at ¶ 16.)

13

14      Just as concerning, TRMC had no intention of producing the "crucial"

15  documents it listed in its *Ex Parte* Application. (Feinstein Decl., ¶ 8.) On November

16  12, TRMC's counsel said that TRMC did not have any intention of producing those

17  documents/data. (Feinstein Decl., ¶ 8.) TRMC may have since changed its tune on

18  this point, suggesting it would produce those documents/data. (Feinstein Decl., ¶

19  14.) Given that TRMC also says it either cannot access or locate some of those

20  documents/ data, TRMC's too-late-in-the-game discovery offer is empty.

21      TRMC should not be allowed to delay any longer.  TRMC should have

22  performed some analysis before bringing a publicly filed Counterclaim alleging that

23  Firstsource was incompetent—to the tune of $6.5-7 million.  TRMC never had any

24  evidence to support this claim and therefore it is no surprise that *fourteen months*

25  after filing it, TRMC has not produced this non-existent evidence.  TRMC has had

26  more than sufficient time to get its act together.

27

28

QUARLES & BRADY
LLP
ATTORNEYS AT LAW
MILWAUKEE

QB\42948330.1                    -2-                    PLAINTIFF'S NOTICE OF MOTION
                                                        AND MOTION FOR SANCTIONS
                                                        1:15-CV-01136-DAD-EPG

## A.   TRMC DID NOT IDENTIFY OR PRODUCE DOCUMENTS SUPPORTING ITS CLAIM FOR DAMAGES.

In its Initial Disclosure—drafted nearly a year ago—TRMC did not identify *any* documents in its possession, custody, or control. (*See* Feinstein Decl., Ex. A.) Rather, TRMC alleged that all of the documents supporting its counterclaim were in *Firstsource's* control. (*Id.*) TRMC did not produce any documents with its initial disclosure. (*Id.* at ¶ 2.) TRMC has never updated its initial disclosure. (*Id.* at ¶ 2.) And when Firstsource formally requested "all Documents supporting [TRMC's] claim of damages," TRMC produced a total of just *32 pages*—15 of which are just a copy of the contract already attached to Firstsource's complaint and the termination letter from TRMC. (*Id.*, Ex. B, at 5; Ex. C, at 1, 19–32; *compare* Doc No. 1-1.) TRMC's response did not suggest it had *any* more documents to support its $6,500,000 to $7,000,000 counterclaim. (*See* Feinstein Decl., Ex. B, at 5.)

Counsel for Firstsource wrote to counsel for TRMC and detailed the documents TRMC should have and would need to prove its claim. (Feinstein Decl., Ex. D.) TRMC never responded in writing. During a call on June 14, 2016 counsel for TRMC implied that the 17 pages were, in fact, everything in TRMC's possession, custody, and control supporting its claim. (*Id.* ¶ 6.)

## B.   TRMC SOUGHT AND RECEIVED EXTRAORDINARY *EX PARTE* RELIEF.

At the very end of discovery—eleven months after bringing its counterclaim—TRMC took the extraordinary step of asking for an *ex parte* extension of time. (Doc. No. 35). In its *Ex Parte* Application, TRMC's counsel listed five categories of documents that she said were "not only **crucial** to [TRMC's] defense of Firstsource's claim, but also to [TRMC's] prosecution of its counterclaims." (Doc. No. 35, at 5:13–15 (emphasis added).) According to TRMC, the categories of documents it was working to produce were:

1

2

- The documents and records used to create TRMC000002 – TRMC 000018;

3

- All documents relating to the accounts [TRMC] alleges are at issue;

4

5

- All records supporting the provision of the services at issue, including those with [TRMC's] bill coding;

6

7

- All documents relating to adjustments made on the accounts at issue; and

8

- The payor contracts for the accounts at issue.

9  (Doc. No. 35, at 8:5–13.) TRMC's counsel told the Court it had "worked diligently

10  to obtain and produce the documents requested by Firstsource, and [TRMC]

11  appreciates Firstsource's need for the documents." (*Id.* at 9:20–21.) TRMC's

12  Controller, Delbert Bryant, told the Court:

13  I am informed and believe that the first consultant may

14  complete its work within this week. I am further informed

15  and believe that upon receipt of data from the first

16  consultant, the second consultant may require two to three

17  weeks to complete its analysis of the data. I therefore

18  anticipate that a 45-day continue of the deadlines in this

19  case should provide [TRMC] sufficient time to review and

20  analyze the documents once produced.

21  (Doc. No. 35-2, ¶ 16.)

22      The Court gave TRMC the benefit of the doubt.  In its Order granting

23  TRMC's *Ex Parte* Application, "the court [found] that a modest continuance sought

24  by defendant is appropriate and should provide defendant adequate time to

25  complete its production in a reasonable manner." (Doc. No. 45, at 2:28–3:2.)

26

27

28

QUARLES & BRADY
LLP
ATTORNEYS AT LAW
MILWAUKEE

QB\42948330.1                          -4-

PLAINTIFF'S NOTICE OF MOTION
AND MOTION FOR SANCTIONS
1:15-CV-01136-DAD-EPG

1

2

### C.   TRMC DID NOT WORK DILIGENTLY IN THE EXTENDED DISCOVERY PERIOD.

3

4

TRMC *stopped even trying* to produce these documents shortly after filing its *Ex Parte* Application. In her section of the Joint Status Report [Doc. No. 51], counsel for TRMC told the Court: "TRMC could not reasonably move forward with the analyses until it knew the Court would grant its *Ex Parte* Application" and "[a]fter several days passed without a ruling from the Court on the Application, TRMC concluded that no continuance would be granted and that re-commencing its account analyses for purposes of making any further production would be futile." (Doc. No. 51, at 5:11–13, 15–17.)

5

6

7

8

9

10

11

In fact, reading between the lines, TRMC was informing the Court that it never intended to produce the "crucial" documents described it the *Ex Parte* Application.  Instead, TRMC told the Court it would produce those documents but only intended to produce "analyses," made-for-litigation Excel spreadsheets.  After TRMC failed to produce the "crucial" documents by November 6, Firstsource asked TRMC about those documents. On November 12, TRMC confirmed that it did not intend to produce those "crucial" documents.  (Feinstein Decl., ¶ 8.)

12

13

14

15

16

17

18

TRMC now says that the four made-for-litigation spreadsheets it produced in the extended discovery period are inaccurate and/or incomplete and cannot be fixed.  (Feinstein Decl., ¶ 9.)

19

20

21

TRMC did not supplement any of its discovery responses or its Rule 26 disclosures during the extended discovery period. (Feinstein Decl., ¶¶ 2, 17.)

22

23

### D.   TRMC BELATEDLY PRODUCED PAYOR CONTRACTS WITHOUT SAYING HOW THEY RELATE TO ITS CLAIMS.

24

25

26

On November 21, 2016, TRMC produced a number of its contracts with a variety of insurance carriers.  (Feinstein Decl., ¶ 10.) These contracts were all executed years ago. TRMC did not explain why it could not produce them before

27

28

QUARLES & BRADY
LLP
ATTORNEYS AT LAW
MILWAUKEE

QB\42948330.1                                   -5-

PLAINTIFF'S NOTICE OF MOTION
AND MOTION FOR SANCTIONS
1:15-CV-01136-DAD-EPG

1  discovery closed. (Feinstein Decl., ¶ 12.) TRMC has not identified any accounts it

2  alleges support its Claims at all, much less which may relate to any of these

3  contracts.  (Feinstein Decl., ¶ 11.)

### E.    TRMC STILL DOES NOT KNOW WHETHER IT HAS THE "CRUCIAL" DOCUMENTS.

6         While TRMC has recently suggested it will produce the "crucial" documents,

7  *at the very same time,* TRMC stated that it either does not have some of them or

8  does not know where they are. (Feinstein Decl., ¶ 15.).  On Wednesday, December

9  7, TRMC suggested that it would agree to a rolling production of information

10 identifying those accounts that are at issue in its Claims and the "data underlying its

11 allegation."  (Feinstein Decl., ¶ 14.) At almost the same time, however, TRMC told

12 Firstsource that it did not know where many of this data/ documents were and

13 questions whether Firstsource had them (it does not).  (Feinstein Decl., ¶¶ 15-16.)

14 Moreover, TRMC had already repeatedly told Firstsource that it believed that (even

15 if TRMC could figure out how to extract the relevant data) Firstsource would not be

16 able to use the electronic data without access to TRMC's platform. (Feinstein Decl.,

17 ¶ 18.)

18

19        Specifically, TRMC has admitted it does not know: 1) whether it has or can

20 access the billing platform on its system that was used by Firstsource; 2) whether it

21 has or can locate coverage letters from payors; and 3) whether it has or can locate

22 coordination of benefits information. (Feinstein Decl., ¶ 15). It bears repeating that

23 in a case in which TRMC is essentially arguing that Firstsource did not bill enough,

24 TRMC does not know where its billing system is or how to access it. TRMC should

25 have figured out where its relevant evidence was prior to the Parties Rule 26(f)

26 conference. One month after the second-extended discovery deadline passed,

27 TRMC still does not know.

28        This problem is more than theoretical. Without access to the billing platform,

QUARLES & BRADY
LLP
ATTORNEYS AT LAW
MILWAUKEE

QB\42948330.1                    -6-                    PLAINTIFF'S NOTICE OF MOTION
                                                       AND MOTION FOR SANCTIONS
                                                       1:15-CV-01136-DAD-EPG

1  TRMC does not have access to the actual "bills" Firstsource sent out on its behalf.

2  (Declaration of Cameron Pearl, ¶¶ 3-9.)  TRMC needs data from this system to

3  know what it billed for the service at issue in order to make a determination as to

4  what it should have been paid for that bill.  (*Id.*; ¶ 13.)  Moreover, while TRMC

5  might have some other billing related information in other locations, that

6  information is only in preliminary form. (Pearl Decl., ¶ 9.) One of the things the

7  billing system did was to pull data from TRMC's patient accounting system (known

8  as "MS4") and edit that data received from MS4 to make sure it conforms to payor

9  requirements. (Pearl Decl., ¶¶ 3-9.) However, TRMC did not have the data from

10  MS4 "updated" to reflect the edits to that data made by its billing system. (Pearl

11  Decl., ¶ 9.) Thus, without access to this billing system, TRMC does not have access

12  to the actual "bills" at issue. (*Id.*)

13  **F.     TRMC HAS NOT ACTED WITH IN GOOD FAITH IN**
14         **DISCOVERY.**

15  TRMC has never acted with any diligence to identify and produce the

16  documents it needed to prove its Claims. TRMC produced no such information by

17  either the first-extended (by stipulation) discovery deadline or the second-extended

18  discovery deadline. TRMC admitted that shortly after filing for extraordinary relief,

19  it stopped whatever efforts it was making to produce documents to support its

20  Claims.  (Doc. No. 51, at 5:11–13, 15–17.) After the Court granted TRMC's *Ex*

21  *Parte* Application, TRMC threw together and produced some spreadsheets with

22  some information about patient accounts, but it now admits that those spreadsheets

23  (and others produced on September 22) were inaccurate and/or incomplete and

24  cannot be fixed.

25  TRMC admitted to Firstsource, on November 12, that it did not intend to

26  produce any of the documents it told the Court were "crucial" in its *Ex Parte*

27  Application. (Feinstein Decl., ¶ 8.) It was only weeks later, over a month after

28

QUARLES & BRADY
LLP
ATTORNEYS AT LAW
MILWAUKEE

QB\42948330.1                           -7-                    PLAINTIFF'S NOTICE OF MOTION
                                                              AND MOTION FOR SANCTIONS
                                                              1:15-CV-01136-DAD-EPG

1   discovery ended, that TRMC suggested it would be amenable to producing these

2   documents/ data. (Feinstein Decl., ¶ 14.)

3       Nor did TRMC turn over a new leaf after the November 21 informal

4   discovery conference. TRMC did not even initiate a discussion as to whether the

5   Parties might stipulate to seek an extension of pending deadlines. (Feinstein Decl.,

6   ¶ 13.) It took two weeks to substantively respond to Firstsource's draft and, even

7   then, promised to produce documents/data it told Firstsource it either did not have

8   or could not access. (Feinstein Decl., ¶ 14.)

9       TRMC now admits that it does not know how to access some of the

10  documents and data it told the Court it was so diligently working to produce in its

11  *Ex Parte* Application. (Feinstein Decl., ¶ 15.) Despite not even knowing if it has

12  these documents and data, it wants Firstsource to believe it will produce it

13  (although TRMC now claims to need[1] *ninety* days to produce the "crucial"

14  documents it previously told the Court would be produced in two to three weeks).

15  (Feinstein Decl., ¶¶ 14-15, *compare* Doc. No. 35-2, Bryant Decl., at ¶ 16.)

16  ## III.   ARGUMENT.

17

18      Firstsource asks this Court to exercise its power under Rule 37 to dismiss

    TRMC's affirmative defenses and counterclaim because TRMC has failed—
19
    repeatedly—to produce the documents and data TRMC has identified as being
20
    "crucial" to these claims. Firstsource has repeatedly raised this issue with TRMC.
21
    TRMC acknowledged its failures and asked this Court in an *Ex Parte* Application
22
    for an additional 45 days of discovery to remedy those failures.  TRMC did not
23
    produce these documents and data in that additional 45 day period and has
24
    withdrawn the documents it did produce in that period.  TRMC has not acted with
25
    any diligence since the extended discovery period ended and now seeks further
26

27

    ----

    [1] Firstsource does not intend to imply TRMC has asked *the Court* for anything; TRMC has not
28  brought a new motion for an extension of time.

QUARLES & BRADY
LLP
ATTORNEYS AT LAW
MILWAUKEE

PLAINTIFF'S NOTICE OF MOTION
AND MOTION FOR SANCTIONS
1:15-CV-01136-DAD-EPG

1  delay. Enough is enough, TRMC has failed to pursue its claims, delayed Firstsource

2  from receiving judgment on Firstsource's claim and this Court should dismiss

3  TRMC's affirmative defenses and counterclaim.

4       This Court must consider five factors in determining whether to dismiss an

5  action pursuant to Rule 37(b)(2)(C):

6       (1) The public's interest in expeditious resolution of litigation;

7       (2) The court's need to manage its docket;

8       (3) The risk of prejudice to the opposing party;

9       (4) The public policy favoring disposition of cases on their merits; and

10       (5) The availability of less drastic sanctions.

11  *Berna v. Powell*, No. 1:15-CV-00283-AWIEPG, 2016 WL 6693505, at *2 (E.D.

12  Cal. Nov. 14, 2016) (citing *Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112,

13  1115 (9th Cir. 2004)). In addition, this Court must find that TRMC's failure to

14  produce any documents supporting its Claims amounts to "willfulness, bad faith, or

15  fault," in order to dismiss TRMC's Claims. *Id.*

16

    **A.**    **The First and Second Factors Favor Sanctions.**

17

18       Where a court order is violated, the first and second factors will favor

19  sanctions. *Id.* In fact, the first of the enumerated factors "always favors dismissal."

20  *Berna*, 2016 WL 6693505, at *3 (citing *Pagtalunan v. Galazza*, 291 F.3d 639, 642

21  (9th Cir. 2002)). The second factor also weighs in favor of dispositive sanctions,

22  especially where the opposing party has participated only intermittently and offered

23  no justification for his refusal to participate in the discovery process. *Id.*

24       Here, TRMC violated this Court's order by failing to produce the documents

25  it told the Court it would. TRMC admits that after it filed its *Ex Parte* Application it

26  stopped searching for responsive documents. (Doc. No. 51, at 5:11–14.) In fact,

27  TRMC did not intend to follow the Court's order. At least as late as November 12,

28  2016, TRMC had no intention of producing the actual documents/ data it told the

QUARLES & BRADY LLP
ATTORNEYS AT LAW
MILWAUKEE

QB\42948330.1             -9-             PLAINTIFF'S NOTICE OF MOTION
AND MOTION FOR SANCTIONS
1:15-CV-01136-DAD-EPG

1    Court were "crucial" to its Claims. (Feinstein Decl., ¶ 8.)

2        TRMC failed to produce any documents supporting its Claims. (Feinstein

3    Decl., ¶¶ 7-9, Ex. E.) Even the extended discovery deadline passed over a month

4    ago and TRMC has yet to identify even one account it claims is at issue.

5        Moreover, TRMC admits that the entire time it was making promises about

6    what it would produce to prove its allegations that Firstsource was negligent in its

7    billing services, TRMC does not know how to access the very billing program at

8    issue. (Pearl Decl., ¶ 9.)

9        As of December 5, 2016, TRMC did not know whether it still has that billing

10   program. (Pearl Decl., ¶ 9.) Over and over again, TRMC has made statements

11   suggesting it will produce the information necessary to support its Claims and over

12   and over again it has not. TRMC refuses to participate in the discovery process,

13   despite its statements to the contrary. TRMC provides this Court with more than

14   sufficient reason to weigh the first and second factors in favor of dismissal. *Berna*,

15   2016 WL 6693505, at *3; *Pagtalunan*, 291 F.3d at 642.

16

17       **B.    The Third Factor Favors Sanctions.**

18       The third factor requires showing that the opposing party's actions impaired

19   the moving party's ability to proceed to trial or threatened to interfere with the

20   rightful decision of the case. *Berna*, 2016 WL 6693505, at *3 (citing *Pagtalunan*,

21   291 F.3d at 642); *see also Saunders v. Cty of San Bernardino*, No. EDCV 15-0188-

22   FMO (KKx), 2015 WL 8769979, at *4 (C.D. Cal. Dec. 14, 2015) (holding a party's

23   refusal to produce evidence in discovery supporting its claim presumptively shows

24   the claim is meritless and prejudices the other party's ability to present its case).

25       In this case, TRMC has prevented Firstsource from obtaining the most basic

26   evidence that supports TRMC's claims and, conversely, the most basic evidence

27   necessary to defend against them. TRMC has interfered with the disposition of this

28

QUARLES & BRADY
LLP
ATTORNEYS AT LAW
MILWAUKEE

QB\42948330.1                    -10-             PLAINTIFF'S NOTICE OF MOTION
                                                 AND MOTION FOR SANCTIONS
                                                 1:15-CV-01136-DAD-EPG

action, through its flagrant disregard for both the original discovery schedule and the extended discovery schedule. (Feinstein Decl., ¶ 8.) Because TRMC has not produced the actual documents it told this Court that it would, TRMC has impaired Firstsource's ability to analyze, respond, or conduct additional discovery.  *Berna*, 2016 WL 6693505, at *3. TRMC has essentially forced this action to come to a standstill.

### C.    TRMC Cannot Save Its Claims By Relying on the Fourth Factor.

The fourth factor, the public policy favoring disposition of cases on their merits, weighs against dismissal. But this factor "lends little support to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction." *Berna*, 2016 WL 6693505, at *4 (citing *In re Phenylpropanolamine (PPA) Prods. Liability Litig.*, 460 F.3d 1217, 1228 (9th Cir. 2006)); *see also In re Exxon Valdez*, 102 F.3d 429, 433 (9th Cir. 1996) ("But even [the public policy] lends little support to appellants, whose total refusal to provide discovery obstructed resolution of their claims on the merits.").

Similarly described under the third factor, TRMC's conduct has impeded the progress of moving this case towards a disposition on the merits. On September 20, 2016, TRMC expected to produce discovery in 2-3 weeks. It is now December 9, and TRMC has failed to produce anything (other than spreadsheets it has now withdrawn). TRMC waited until December to suggest that it simply does not have access to or does not have some of the documents it promised to produce.  This conduct is far beyond obstructionist. *See Berna*, 2016 WL 6693505, at *4. TRMC's conduct amounts to a total refusal to provide discovery and as such, the fourth factor actually weighs in favor of dismissal. *See In re Exxon Valdez*, 102 F.3d at 433.

QUARLES & BRADY
LLP
ATTORNEYS AT LAW
MILWAUKEE

QB\42948330.1                                -11-

PLAINTIFF'S NOTICE OF MOTION
AND MOTION FOR SANCTIONS
1:15-CV-01136-DAD-EPG

**D.    Less Drastic Alternatives Are Not Likely To Induce TRMC to Comply.**

The fifth factor, the availability of less drastic alternatives, weighs in favor of dismissal when less drastic alternatives do not induce the opposing party to participate in the litigation. *Berna*, 2016 WL 6693505, at *4. For example, evidentiary sanctions are not an alternative when the moving party's requests target information related to the opposing party's defenses. *Id.* If the Court were to grant some evidentiary sanction—precluding the opposing party from offering any evidence of a potential defense—the result would be the same as if the Court issued dispositive sanctions. *Id.*; *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 352 (9th Cir. 1995) (terminating sanctions appropriate where party's conduct illustrates "an abiding contempt and continuing disregard" for court orders).

Here, the onus was on TRMC to produce discovery on TRMC's Claims.  If this Court were to issue evidentiary sanctions, such as precluding TRMC from offering evidence of its affirmative defenses, this is precisely the same result as if the Court had issued dispositive sanctions. *Berna*, 2016 WL 6693505, at *4. There is no incentive for TRMC to produce discovery on its Claims if it will just be subject to evidentiary sanctions. There is no less drastic alternative to deal with TRMC's less-than-forthcoming conduct, and as such, this Court should dismiss TRMC's Answer.

**IV.    DISMISSAL IS APPROPRIATE HERE BECAUSE TRMC IS SOLELY AT FAULT FOR ITS CONDUCT.**

The sanction of dismissal under Rule 37 is warranted in extreme circumstances where the violation is "due to willfulness, bad faith, or fault of the party." *In re Exxon Valdez*, 102 F.3d at 432. Unfortunately, this is such a case. TRMC has never acted with any diligence to identify and produce the documents it

QB\42948330.1 -12-
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SANCTIONS 1:15-CV-01136-DAD-EPG

1    needed to prove its Claims. TRMC produced no such information by either the

2    first-extended (by stipulation) discovery deadline or the second-extended discovery

3    deadline. TRMC admitted that shortly after filing for extraordinary relief, it stopped

4    whatever efforts it was making to produce documents to support its Claims. (Doc.

5    No. 51, at 5:11–13, 15–17.) After the Court granted TRMC's *Ex Parte* Application,

6    TRMC produced some spreadsheets, but it now admits that those spreadsheets (and

7    others produced on September 22) were inaccurate and/or incomplete and cannot be

8    fixed.  These circumstances show it was TRMC who halted discovery.

9         TRMC admitted that it did not intend to produce any of the documents it told

10   the Court were "crucial" in its *Ex Parte* Application. (Feinstein Decl., ¶ 8.) It was

11   only weeks later, after discovery ended, that TRMC suggested it would be

12   amenable to producing these documents/ data. TRMC did not even initiate a

13   discussion as to whether the Parties might stipulate to seek an extension of pending

14   deadlines. It took two weeks to substantively respond to Firstsource's draft and,

15   even then, promised to produce documents/data it told Firstsource it either did not

16   have or could not access.  (Feinstein Decl., ¶¶ 13-14.)

17        TRMC now admits that it does not know how to access some of the

18   documents and data it told the Court it was so diligently working to produce in its

19   *Ex Parte* Application. Despite not even knowing if it has these documents and data,

20   it wants Firstsource to believe it will produce it.  (Feinstein Decl., Ex. X. [11/7

21   email], *compare* Doc. No. 35-2, Bryant Decl., at ¶ 16.) All of these facts combined

22   show TRMC chose to refuse to participate in the discovery process. The facts also

23   show that this refusal was TRMC's fault, and TRMC willfully acted in bad faith.

24   *See Henry v. Gill Industries, Inc.*, 983 F.2d 943, 948-49 (9th Cir. 1993)

25   (disobedient conduct not shown to be outside the control of the litigant is all that is

26   required to demonstrate willfulness, bad faith, or fault).

27

28

QUARLES & BRADY
LLP
ATTORNEYS AT LAW
MILWAUKEE

QB\42948330.1                            -13-

PLAINTIFF'S NOTICE OF MOTION
AND MOTION FOR SANCTIONS
1:15-CV-01136-DAD-EPG

## V.   CONCLUSION.

This Court should dismiss TRMC's affirmative defenses and counterclaim because time after time it has failed to produce the documents it identified as "crucial" to supporting those Claims. Firstsource should not be required to tolerate these delays any longer. Accordingly, Firstsource respectfully asks this Court to dismiss TRMC's claims under Rule 37(b)(2)(C).

/////

/////

Dated:        December 9, 2016.              Quarles & Brady LLP

By: /s/ *Emily M. Feinstein*
Emily M. Feinstein
WI SBN: 1037924
QUARLES & BRADY LLP
33 E. Main St., Suite 900
Madison, WI 53703
Phone: (608) 251-5000

Patrick J. Proctor-Brown
WI SBN: 1091326
QUARLES & BRADY LLP
411 E. Wisconsin Ave., Suite 2400
Milwaukee, WI 53202
Phone: (414) 277-5611

Attorneys for Plaintiff,
Firstsource Solutions, USA, LLC

QUARLES & BRADY
LLP
ATTORNEYS AT LAW
MILWAUKEE

QB\42948330.1                                -14-