Quarles & Brady LLP
Emily M. Feinstein, WI Bar No. 1037924
Emily.Feinstein@quarles.com
33 E. Main St.,
Suite 900
Madison, WI 53703
Telephone: 608.251.5000
Facsimile:  608.294.4912

Patrick J. Proctor-Brown, WI Bar No. 1091326
Patrick.Proctor-Brown@quarles.com
411 East Wisconsin Avenue
Suite 2400
Milwaukee, WI 53202
Telephone: 414.277.5611
Facsimile: 414.978.8906

Attorneys for Plaintiff
Firstsource Solutions, USA, LLC

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIRSTSOURCE SOLUTIONS USA, LLC,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>TULARE REGIONAL MEDICAL CENTER,<br><br>　　　　　　Defendant. | Case No. 1:15-cv-01136-DAD-EPG<br>[JUDGE DALE A. DROZD]<br><br>Date:　January 19, 2016<br>Time:　11:15 a.m.<br>Ctrm:　5<br><br>Action Filed: July 21, 2105<br>Trial Date:　June 13, 2017 |

**FIRSTSOURCE'S REPLY IN SUPPORT OF<br>MOTION FOR SANCTIONS**

In support of its Motion for Sanctions [Doc. No. 57], Plaintiff FIRSTSOURCE SOLUTIONS USA, LLC ("Firstsource") hereby replies to Defendant TULARE REGIONAL MEDICAL CENTER ("TRMC").

/////

/////

QUARLES & BRADY LLP
ATTORNEYS AT LAW
MILWAUKEE

QB\43363873.4

FIRSTSOURCE'S REPLY IN SUPPORT OF
MOTION FOR SANCTIONS
1:15-CV-01136-DAD-EPG

## INTRODUCTION

TRMC should be sanctioned for its repeated failure to fulfill its discovery obligations. TRMC failed to prosecute its claim, failed to make any effort to produce the "crucial" documents, and has acted in bad faith throughout this litigation. There are two possible sanctions under Federal Rule of Civil Procedure 37. First, TRMC meets the standard for terminating sanctions under Rule 37(b)(2) due to its inaction, and its claims should be dismissed on that basis alone. But, second, TRMC cannot use its late-produced discovery because of the "automatic" and "self-executing" sanction of exclusion under Rule 37(c)(1). Either way, this Court should sanction TRMC's prejudicial conduct.

## UNDISPUTED FACTS RELEVANT TO THE MOTION FOR SANCTIONS

TRMC did not produce any documents supporting its claim before discovery ended, other than the spreadsheets that it withdrew because it was unwilling to fix them. (*See* Doc. No. 71-2, ¶¶ 3–6; *see also* Doc. No. 56, ¶¶ 2–14; Doc. Nos. 56-1, 56-2; Doc. No. 71-2, ¶ 13 (listing discovery productions provided *after* the close of discovery and after response to summary judgment was filed).)

Nor has TRMC offered to produce the documents it told this Court were "crucial" in its *Ex Parte* Application. Instead, TRMC first tried to rely on made-for-litigation spreadsheets, created by unidentified consultants. (*See* Doc. No. 56, ¶¶ 3, 4; *see also* Doc. No. 56-1.) After identifying those spreadsheets as too wrong to fix, TRMC then suggested it would identify accounts and provide some "data." (*See* Doc. No. 71-2, ¶¶ 4, 8; *see also* Doc. No. 58, ¶¶ 8, 9, 15.) TRMC would not agree to produce the "crucial" documents, however. (*See* Doc. No. 56, ¶ 5; *compare* Doc. No. 71-2, ¶ 8.) Instead, TRMC offered "access" to parts of its system (Doc. No. 71-3, pp. 12–13), meaning that TRMC would let Firstsource search its system to find those "crucial" documents. Firstsource would not agree to take on TRMC's discovery duties. (Proctor-Brown Decl., Ex. A.)

In fact, not only has TRMC failed to produce these documents, when it filed

QUARLES & BRADY LLP
ATTORNEYS AT LAW
MILWAUKEE

QB\43363873.4                                -2-                        FIRSTSOURCE'S REPLY IN SUPPORT OF
                                                                        MOTION FOR SANCTIONS
                                                                        1:15-CV-01136-DAD-EPG

its *Ex Parte* Application, TRMC did not tell the Court it did not even know whether it had all of the documents it was purportedly working diligently to produce. (Doc. No. 58, ¶ 15.) TRMC fails to address this fact in its response. Nor does TRMC explain whether it has located its billing data or verified that the data was accurately preserved.

The truth is Firstsource did a good job for a difficult client. It is incontrovertible that Firstsource collected $17,594,262.53 in revenue for TRMC from October, 2014 through May, 2015. (Doc. No. 68, Undisputed Fact # 41.) During months when Firstsource was the sole collector, TRMC received at least $4.2 million in revenue. (*Id.*) During the entire course of the relationship, Firstsource collected on the order of $180 million in revenue for TRMC.

TRMC's allegations against Firstsource remain unsupported, despite TRMC claiming it was aware of problems as far back as 2014. Rather, TRMC has four accounts on which it expects Firstsource and this Court to assume it had a legal right to receive payments and was not paid as much as it expected. (*See* Doc. No. 70, ¶¶ 5, 6.) For two of those accounts, TRMC itself produced documents that contradicted its claims. (*See* Doc. No. 67, § IV., 15:16–17:7; *see also* Doc. No. 70-2.)

TRMC still has not identified all of the accounts that it claims are at issue. TRMC assures this Court that it has now done sufficient preliminary analysis to identify accounts underpaid by insurers. (*See* Doc. No. 71 ("TRMC identified 219,889 underpaid accounts … much of which TRMC *believes* resulted from Firstsource's failure[.]" (emphasis added).) TRMC has not, however, done any actual analysis to determine whether these accounts were actually underpaid and, if so, to determine whether Firstsource was at fault. Regardless, TRMC has not told this Court what it would need to do to review those accounts to determine if any of them show that Firstsource should have collected more funds, when it could possibly do so or, perhaps most importantly, whether TRMC wants to spend the

resources to do so. Two and half months after the close of discovery, TRMC still has no evidence that Firstsource did anything but a good job for a difficult client.

## ARGUMENT

This Court should sanction TRMC because it acted in bad faith in this case. Among other things, TRMC failed to make any effort to produce the "crucial" documents meanwhile publically repeating baseless allegations and making no effort to find any evidence to support those allegations.

To be clear, TRMC has now conceded that documents it once told this Court were "crucial" to its claims are not even relevant. In its *Ex Parte* Application, TRMC claims that these documents were key to its ability to prove lost revenue. In response to Summary Judgment, however, TRMC failed to dispute that, under the Agreement, it cannot receive lost revenue. Thus, on the one hand TRMC has been delaying a decision on the merits of this case because it said it needed to prove lost revenue, on the other TRMC does not dispute it disclaimed the ability to obtain lost revenue as a remedy in the Agreement.

This Court cannot allow TRMC to continue to delay the resolution of this case. There are two bases for sanctioning TRMC. First, this Court can sanction TRMC for its bad faith in failing to comply with this Court's Scheduling Order. Second, this Court can enforce the automatic and self-executing exclusion provisions of Federal Rule of Civil Procedure 37(c)(1).

**I.     TRMC'S INACTION MEETS THE CRITERIA FOR DISMISSAL.**

TRMC violated the Court's scheduling orders by not producing any of the "crucial" documents during the discovery period. The standard for dismissing TRMC's affirmative defenses and counterclaim outright has five factors:

(1) The public's interest in expeditious resolution of litigation;

(2) The court's need to manage its docket;

(3) The risk of prejudice to the Firstsource;

(4) The public policy favoring disposition of cases on their merits; and

(5) The availability of less drastic sanctions.

*Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112, 1115 (9th Cir. 2004). All five factors support dismissing TRMC's claims under Fed. R. Civ. P. 37(b)(2)(c).

As TRMC acknowledges (Doc. No. 71, at 13, fn. 1), the first of the five factors "always favors dismissal." *Pagtalunan v. Galazza*, 291 F.3d 639, 642 (9th Cir. 2002).

TRMC downplays the effect of its conduct to suggest the second factor does not weigh in favor of dismissal. TRMC flouted the scheduling order in this case. On November 16, TRMC told this Court it could respond to summary judgment by December 22, 2016. This Court gave TRMC even more time than TRMC sought to respond to summary judgment and TRMC still failed to produce the documents on which it relied to oppose summary judgment until after its response deadline. Now, TRMC apparently seeks a complete restart of discovery—*after* summary judgment has been fully briefed and set for hearing (although, to be clear, TRMC has not moved for a new scheduling order). "A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson v. Mammoth Recreations, Inc.* 975 F.2d 604, 610 (9th Cir. 1992) (citations and internal quotations omitted). Here, the scheduling order not only set a deadline by which to complete discovery but went on to say:

> In this context, "complete" means that all discovery shall have been conducted so that all depositions have been taken and any disputes relative to discovery shall have been resolved by appropriate order if necessary and, where discovery has been ordered, the order has been obeyed. (Doc. No. 25, 2:11–14.)

TRMC acknowledged it violated this order when it filed its *Ex Parte* Application. TRMC violated this order again when it decided to stop work on production after this Court did not immediately decide TRMC's *Ex Parte* Application. TRMC has

now violated this order a third time by producing material after the deadline and attempting to use this material to resist summary judgment. "Disregard of the [scheduling] order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier." *Johnson*, at 610.

On the third factor, TRMC is simply wrong when it casually says its delay "has not permanently denied Firstsource the ability to obtain and utilize any relevant evidence." (Doc. No. 71, 11:28–12:1.) Discovery closed over two months before TRMC produced any documents to support its claims. As a result, Firstsource has not been able to conduct any meaningful discovery on TRMC's claims. Besides, TRMC waited nearly *fifteen* months to *begin* producing the "crucial" documents, conduct which must be unreasonable delay, and "[p]rejudice from unreasonable delay is presumed." *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d 1217, 1236 (9th Cir. 2006) (citation omitted). TRMC's "[l]ast-minute tender of documents does not cure the prejudice to [Firstsource] nor does it restore to other litigants on a crowded docket the opportunity to use the courts." *North American Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451 (9th Cir. 1986) (citations omitted).

Regarding the fourth factor, TRMC may not have been repeatedly warned *by the Court*, but Firstsource warned it. In any case, this factor "lends little support to" TRMC because its "total refusal to provide discovery obstructed resolution of [its] claims on the merits." *In re Exxon Valdez*, 102 F.3d 429, 433 (9th Cir. 1996). After all, TRMC decided not to find and produce documents that *were in its possession.*

Lastly, less drastic sanctions are not available. Firstsource specifically drew the Court's attention to the standard for dismissal, because less drastic sanctions, like exclusion, are tantamount to dismissal. TRMC argued in its *Ex Parte* Application that it would "suffer severe prejudice" which would "permeate the entire action" if not allowed to submit the "crucial" documents during discovery.

(Doc. No. 35, 6:20, 7:5.) What TRMC disingenuously suggests as a remedy—a stay under Fed. R. Civ. P. 37(b)(2)(A)(iv)—is actually *relief* TRMC has not requested.

This Court should dismiss TRMC's claims because of TRMC's inaction.

## II. REGARDLESS, TRMC CANNOT AVOID THE "SELF-EXECUTING" AND "AUTOMATIC" SANCTIONS OF RULE 37.

Even if the Court does not dismiss TRMC's claims as a sanction, it should effectuate the "self-executing" and "automatic" sanction of exclusion. TRMC does not have substantial justification for its failure to produce material that *was in its possession*. Rule 37 is explicit:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless.

Fed. R. Civ. P. 37(c)(1).

Here, TRMC failed to update its initial disclosures or supplement its discovery responses as required by Rule 26(e)(1) and the scheduling order in this case. TRMC failed to produce the "crucial" documents supporting its claim for damages prior to the close of discovery.

The Ninth Circuit has said "Rule 37(c)(1) is a 'self-executing,' 'automatic' sanction designed to provide a strong inducement for disclosure." *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 828 (9th Cir. 2011) (*citing Yeti by Molly Ltd.*, 259 F.3d 1101, 1106 (9th Cir. 2001)). "Rule 37 'gives teeth' to Rule 26's disclosure requirements" and the "only exceptions to Rule 37(c)(1)'s exclusion sanction apply if the failure to disclose is substantially justified or harmless." *Id.*

Like the defendant in *Yeti by Molly*, TRMC had ample opportunity to ask for

an extension of the discovery deadline. 259 F.3d, at 1107 (*citing Quevedo v. Trans-Pac. Shipping, Inc.*, 143 F.3d 1255, 1258 (9th Cir. 1998)). TRMC *still has not*—two months after it did not produce the "crucial" documents—asked for another extension. To be clear, TRMC *chose* to delay in this case, and instead concentrate its efforts on other priorities. TRMC cannot rely on the fact that proving its claims required significant effort to justify its delay, as TRMC must have known that fact when it brought those claims.[1] Yet, TRMC did not raise this issue in the Parties' 26(f) conference and seek an extended discovery period. TRMC did not raise this issue when the Parties stipulated to extend deadlines on June 16, 2016. Indeed, TRMC did not raise this issue on November 16, 2016, when it agreed it could respond to summary judgment in December of 2016. TRMC's inaction in this case is not justifiable.

Perhaps realizing it cannot justify its conduct, TRMC does not even try. At no point in its opposition does TRMC even recite the words "justified" or "justification," much less advance a convincing argument.

Nor is TRMC's delay in meeting its discovery obligations harmless. Contrary to TRMC's repeated assertions, "[t]he issue is not whether [Firstsource] eventually obtained the information [it] needed, or whether [TRMC] [is] now willing to provide it, but whether [TRMC's] repeated failure to provide documents and information in a timely fashion prejudiced the ability of [Firstsource] to prepare [its] case for trial." *Payne v. Exxon Corp.*, 121 F.3d 503 (9th Cir. 1997) (citations omitted). As in *Payne*, TRMC's discovery has either been "as the discovery period was drawing to a close, or after it had already closed" and Firstsource was "therefore deprived of any meaningful opportunity to follow up."

---

[1] Although TRMC claims its executives were not working at TRMC during the relevant time period, it fails to mention that TRMC's Declarant, Mr. Delbert Bryant, has been employed at TRMC *since 1980*, and served as the "right arm of the CFO" while Firstsource was working for TRMC. (Proctor-Brown Decl., Ex. B.) Others at TRMC may not have been aware of Firstsource's performance, but Mr. Bryant surely was—he was on the distribution list for the regular reports from Firstsource to TRMC. (Proctor-Brown Decl., Exs. C, D.)

(*Id.*) TRMC's failure is not harmless.

TRMC cannot meet its burden to show its conduct was harmless or substantially justified. The exclusion of its tardy discovery is therefore automatic.

## CONCLUSION

TRMC has delayed and acted in bad faith throughout this litigation and it should be sanctioned under Federal Rule of Civil Procedure 37. Either its claims should be dismissed under Rule 37(b)(2), or its late-produced discovery should be excluded under Rule 37(c)(1). TRMC flouted the scheduling order, undermining the ability of the Court to manage its docket, prejudiced Firstsource, and delayed resolution of this case on the merits. TRMC chose delay in this case because it had other priorities. TRMC meets the standard for dismissal. In any case, TRMC's conduct was not harmless or justified, so exclusion is mandatory. Firstsource's motion should be granted, and Firstsource should also be awarded attorneys' fees and costs under Rule 37(c)(1)(A).

Dated:     January 17, 2017            Quarles & Brady LLP

By: /s/ *Patrick J. Proctor-Brown*
Emily M. Feinstein
WI SBN: 1037924
QUARLES & BRADY LLP
33 E. Main St., Ste 900
Madison, WI 53703
Phone: (608) 251-5000

Patrick J. Proctor-Brown
WI SBN: 1091326
QUARLES & BRADY LLP
411 E. Wisconsin Ave., Suite 2400
Milwaukee, WI 53202
Phone: (414) 277-5611

Attorneys for Plaintiff,
Firstsource Solutions, USA, LLC

QUARLES & BRADY LLP
ATTORNEYS AT LAW
MILWAUKEE

QB\43363873.4                -9-                FIRSTSOURCE'S REPLY IN SUPPORT OF
MOTION FOR SANCTIONS
1:15-CV-01136-DAD-EPG

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that he served a copy of the foregoing on all counsel of record via the Court's CM/ECF system.

Date: January 17, 2017

*/s/ Patrick J. Proctor-Brown*

Patrick J. Proctor-Brown

QUARLES & BRADY LLP
ATTORNEYS AT LAW
MILWAUKEE

QB\43363873.4

CERTIFICATE OF SERVICE
1:15-CV-01136-DAD-EPG