UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIRSTSOURCE SOLUTIONS USA, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>TULARE REGIONAL MEDICAL<br>CENTER,<br><br>    Defendant. | No. 1:15-cv-01136-DAD-EPG<br><br><u>ORDER DENYING MOTION TO DEFER<br>CONSIDERATION OF THE MOTION FOR<br>SUMMARY JUDGMENT AND GRANTING<br>MOTION FOR SUMMARY JUDGMENT</u><br><br>(Doc. Nos. 40, 57, 61) |
| TULARE REGIONAL MEDICAL<br>CENTER,<br><br>    Counter-claimant,<br><br>    v.<br><br>FIRSTSOURCE SOLUTIONS USA, LLC,<br><br>    Counter-defendant. | |

This matter concerns a breach of contract dispute concerning the provision of various fee collection services performed by plaintiff and counter-defendant Firstsource (hereinafter "plaintiff") on behalf of defendant and counter-claimant Tulare Regional Medical Center (hereinafter "defendant"). Now before the court are two motions filed by plaintiff: a motion for summary judgment filed on October 18, 2016 and a motion for terminating sanctions filed on December 9, 2016. (Doc. Nos. 40, 57.) Additionally, in opposition to plaintiff's motion for

1

summary judgment, defendant has filed a request under Federal Rule of Civil Procedure 56(d) to defer consideration of summary judgment and allow it additional time to disclose records it has not yet provided to plaintiff. (Doc. No. 61.) The court held a hearing on these motions on January 19, 2017, at which plaintiff's counsel Emily Feinstein and defendant's counsel Teresa Chow appeared.[1] For the reasons that follow, defendant's request to defer consideration of the summary judgment motion will be denied, plaintiff's motion for summary judgment itself will be granted, and plaintiff's motion for terminating sanctions will be denied as moot.

## BACKGROUND

### A. Factual Background

This matter concerns a dispute over billing-related services provided by plaintiff to defendant. Virtually all of the salient facts related to this case are undisputed. The parties entered a valid contract on November 18, 2010 wherein plaintiff agreed to perform "revenue cycle services, patient access services, and patient financial services"—essentially billing and other business services—for defendant. (Doc. No. 62 at 4–6.) Plaintiff was to receive a contingency fee of 3.75 percent of the total fee payments it collected for defendant. (*Id.* at 6.) The contract provided that defendant would pay invoices on a monthly basis, and would be liable for a service charge of 1.5 percent per month for any invoices unpaid after more than thirty days. (*Id.* at 9.)

Defendant terminated the agreement by letter on September 11, 2014, to be effective May 31, 2015. (*Id.* at 11.) Plaintiff continued to perform services for defendant between September 11, 2014 and May 31, 2015. (*Id.* at 12.) Nevertheless, defendant failed to pay plaintiff for services rendered during this period. (*Id.* at 14–15.) Plaintiff has invoiced defendant for $724,385.08, which defendant has refused to pay. (*Id.* at 16–23.) Plaintiff began assessing late fees on unpaid invoices in January 2015. (*Id.* at 25.)

### B. Procedural Background

Plaintiff filed this suit on July 21, 2015, alleging one claim for breach of contract in its complaint. (Doc. No. 1.) Defendant answered the complaint on October 13, 2015, and alleged

---

[1] All counsel appeared telephonically at the hearing on the pending motions.

one counterclaim for breach of contract, claiming plaintiff failed to collect between $6.5 and $7 million worth of bills for defendant. (Doc. No. 6.) Fact discovery was initially set to close in this case on June 24, 2016. (Doc. No. 25 at 2.) The court extended this deadline to September 22, 2016 upon the stipulation of the parties. (Doc. No. 32 at 3.) Defendant then sought and obtained, *ex parte*, a continuance of all deadlines in the case, including those related to discovery, on September 20, 2016. (*See* Doc. No. 35.) This application was granted by the court on October 21, 2016, and amended by order on November 1, 2016. (Doc. Nos. 45, 46.) Plaintiff, meanwhile, moved for summary judgment on October 18, 2016, arguing that defendant admitted it had been invoiced for the amounts in question and had not paid those invoices, and had provided no admissible evidence on which to base its claim that plaintiff had breached the parties' contract. (Doc. No. 41.) Plaintiff then moved for terminating sanctions related to defendant's affirmative defenses and counterclaim on December 9, 2016, asserting that despite the court's granting of the *ex parte* continuance it had sought, defendant had still not disclosed the required documents or participated in discovery in good faith. (Doc. No. 57-1.)

Defendant opposed plaintiff's summary judgment motion on January 4, 2017. (Doc. No. 61.) In doing so, defendant requested additional time under Rule 56(d) to produce documents it failed to produce during discovery in order to allow the case to be decided on the merits. (*Id.* at 15–17.) Defendant also opposed plaintiff's motion for the imposition of terminating sanctions on January 10, 2017. (Doc. No. 71.) Thereafter, this entire action was automatically stayed pursuant to defendant's bankruptcy filing on October 11, 2017. (Doc. No. 84.) The parties submitted a stipulation, approved by the bankruptcy court, on June 5, 2018, lifting the stay. (Doc. No. 91.)

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party

may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325.). *See also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the

4

1 evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computs., Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." *Walls v. Central Contra Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## ANALYSIS

### A. Rule 56(d) Request

Defendant requests the court defer ruling on plaintiff's summary judgment motion under Rule 56(d) and to reopen discovery in this action. (Doc. No. 61 at 15–17.) Under Rule 56(d), the court must deny or continue a motion for summary judgment if an opposing party can show that "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Indeed, Rule 56(d) "require[es], rather than merely permit[s], discovery where the nonmoving party has not had the opportunity to discover information that is essential to its opposition." *Metabolife Int'l Inc. v. Wornick*, 264 F.3d 832, 849 (9th Cir. 2001); *see also Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1169 (9th Cir. 2011) (noting the rule requires discovery only

where the nonmoving party has not had this opportunity). The opposing party "must identify by affidavit the specific facts that further discovery would reveal and explain why these facts would preclude summary judgment." *Tatum v. City & Cty. of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006); *see also Swoger v. Rare Coin Wholesalers*, 803 F.3d 1045, 1048 (9th Cir. 2015). In order to be entitled to relief under Rule 56(d), defendant here "must show (1) that [it] ha[s] set forth in affidavit form the specific facts that [it] hope[s] to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." *State of California v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998). *See also Swoger*, 803 F.3d at 1048; *Blough v. Holland Realty, Inc.,* 574 F.3d 1084, 1091 n.5 (9th Cir. 2009) (noting that to obtain a continuance under 56(d) a party must make a timely application, specifically identifying the relevant information and some basis for the belief that the information sought actually exists); *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 921 (9th Cir. 1996) ("The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists.")

In addition, the movant must also establish that they have been diligent in pursuing the discovery they now assert is necessary. *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1005 (9th Cir. 2002) ("The failure to conduct discovery diligently is grounds for the denial of a Rule 56[d] motion."); *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 921 (9th Cir. 1996). "District courts have wide latitude in controlling discovery, and decisions not to permit further discovery in response to motions made pursuant to Federal Rule of Civil Procedure 56[d] are reviewed for abuse of discretion." *United States v. Johnson Controls, Inc.*, 457 F.3d 1009, 1023 (9th Cir. 2006) (citing *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002)). *See also Swoger v. Rare Coins Wholesalers*, 803 F.3d 1045, 1047 (9th Cir. 2015).

The court is unpersuaded that discovery should be re-opened in this case. Rather, it appears clear that defendant crafted the bind in which it now finds itself. Put simply, defendant has not been diligent here. What defendant seeks is yet further time in which to disclose records within its own possession to plaintiff so that it can both oppose plaintiff's motion for summary
/////

judgment and pursue its own counterclaim.[2] (Doc. No. 61 at 16–17.) Defendant does not seek further information or documentation from plaintiffs. The documents defendant now wishes to belatedly disclose are, apparently, the billing records for nearly 400,000 patient accounts that form the underlying basis both for its defense to plaintiff's claim and for its counterclaim that plaintiff caused it more than $6.5 million in damages. (*Id.*; Doc. No. 6 at 6–8.)

These records were arguably part of the initial disclosures defendant was required to provide in this action, because they were documents or electronically stored information "the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(ii). Defendant's counterclaim clearly would have been based in large part on these records, which apparently depict patient accounts on which plaintiff allegedly failed to adequately collect. These records were in defendant's possession. Initial disclosures in this case were purportedly completed by the parties prior to February 11, 2016. (*See* Doc. No. 25 at 2.) Thus, defendant's tardiness did not begin at the close of discovery on November 6, 2016, but some nine months earlier, and continued throughout the entire pendency of this case. Indeed, plaintiff also requested these records early on, and defendant replied to this discovery request on June 3, 2016 with a production of only 32 pages worth of documents, none of which apparently included the disputed patient records. (Doc. Nos. 58-2, 58-3.) Defendant now submits an affidavit from its controller indicating it only *began* the process of seeking to disclose this information on August 18, 2016, six months after it probably should have begun this process, two months after it originally responded to plaintiff's discovery request, and only one month before the discovery deadline in place under the court's scheduling order at that time. (*See* Doc. No. 64 at ¶¶ 20–25.)

No satisfactory explanation has been presented concerning this lack of diligence on defendant's part. Defendant's controller, Delbert Bryant, merely explains in his affidavit that the hospital's accounting department resources were over-burdened during the course of this litigation due to the implementation of a bond initiative and an impending audit. (Doc. No. 64 at

---

[2] Defendant presumably recognizes that, having failed to disclose these records, it may not use them in future proceedings in this case. *See* Fed. R. Civ. P. 37(c)(1).

7

¶¶ 18–19.) Because of this, it hired two outside consultants, the first of whom it contacted on August 18, 2016. (*Id.* at ¶¶ 20, 22.) The analysis was purportedly finished "[s]hortly before" the extended November 6, 2016 discovery cut off, and was produced on that date to plaintiff. (*Id.* at ¶¶ 27–28.) However, Bryant reviewed the second consultant's work and "determined it was incomplete," following which defendant began a review of the same. (*Id.* at ¶¶ 29–30.) Indeed, emails between attorneys for the parties indicate that the "incomplete" documents produced were not to be relied upon going forward. (Doc. No. 71-3.) Defendant asserts elsewhere that the people in control of the hospital only took over operations in 2014 and therefore lacked familiarity with defendant's billing records, thereby delaying record production. (Doc. No. 71 at 5.)

While the court understands large document productions can be taxing on an organization, defendant knew from the very beginning of this case that it intended to both defend against plaintiff's claim and bring its own counterclaim on the basis of plaintiff's alleged failure to perform adequately under the parties' contract. The parties proposed the original discovery schedule on November 12, 2015, which brought fact discovery to an end on June 24, 2016, and either were aware or should have been aware of their institutional capacities when they proposed this schedule. (*See* Doc. No. 12 at 5.) Further, defendant knew how to request extensions of time to complete discovery, if necessary, having done so once by stipulation and once via *ex parte* application. (Doc. Nos. 31, 35.) Defendant's failure to retain the necessary consultants until months after discovery had opened and indeed only shortly before the already-extended discovery deadline was to expire is no one's fault but its own. Moreover, the fact that the current management of the hospital took control of operations in 2014 does not excuse defendant's failures to comply with discovery deadlines in this action some two years later. Again, the court understands that management shifts in large institutions may cause some tasks to fall to the side. This, however, is presumably one of the reasons why defendant hired outside counsel to litigate this matter. The failure to produce this discovery material in a timely manner or seek reasonable extensions prior to the close of discovery falls squarely on defendant's shoulders. Defendant's

/////

lack of diligence should not and will not cause the resolution of this case to be delayed any longer.

   **B.** **Summary Judgment**

Having declined to re-open discovery under Rule 56(d), the court now turns to plaintiff's motion for summary judgment. Plaintiff moves for summary judgment arguing that it is entitled to judgment in its favor as a matter of law on its breach of contract claim, any affirmative defenses defendant sought to bring, and on defendant's counterclaim, since defendant admits to the breach of the contract and has come forward with no admissible evidence of plaintiff's purported wrongdoing. (Doc. No. 40.) Additionally, plaintiff seeks to be awarded attorneys' fees and costs pursuant to its contract. (*Id.*) Defendant contends that genuine disputes of material fact remain concerning plaintiff's performance under the contract, particularly as to whether plaintiff adequately performed under the contract as exemplified through four patient accounts it has identified. (Doc. No. 61 at 19–22.)

   1. Evidence to be Considered

At the outset, plaintiff protests that the documentary evidence of the four disputed patient accounts presented by defendant in opposition to plaintiff's motion for summary judgment, attached to declarant Alan Germany's affidavit as Exhibits A through F and found on the court's docket at Document Numbers 40-1 through 40-6, was not disclosed to plaintiff prior to the close of discovery. (Doc. No. 68 at 8–9.) The evidence is therefore "automatically barred" under Rule 37, accordingly to plaintiff. (*Id.*) Though not specifically presented as such, the court interprets this objection as a motion for evidentiary sanctions under Rule 37(c). When a party fails to disclose information during discovery, "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Rule 37(c)(1) sanctions have been described 'as a self-executing, automatic sanction to provide a strong inducement for disclosure of material.'" *Bonzani v. Shinseki*, No. 2:11-cv-0007-EFB, 2014 WL 66529, at *3 (E.D. Cal. Jan. 8, 2014) (quoting *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir.

/////

9

2001)); *see also Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011).

It is apparently undisputed that defendant failed to disclose the patient account records on which it now bases its opposition to the summary judgment motion during discovery. As noted, non-expert discovery in this action closed on November 6, 2016. (Doc. No. 46 at 3.) Defendant's counsel declares she produced these documents to plaintiff on January 8, 2017, two months after the close of discovery. (Doc. No. 71-2 at ¶ 13.) Therefore, these records, and the statements of the declarants based on them, are admissible only if defendant's failure to disclose them was "substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). However, this evidence is also the sole evidence before the court supporting defendant's opposition, its affirmative defenses, and its counterclaim. Therefore, the court's refusal to consider this evidence is tantamount to a dismissal of defendant's counterclaim and its affirmative defenses.

"The party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless." *R&R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1246 (9th Cir. 2012). Nevertheless, evidence preclusion may be a "harsh sanction," particularly where it will amount to dismissal of a claim. *Id.* at 1247. In such circumstances, not only must a district court find a failure to disclose is not substantially justified or harmless, it is also "required to consider whether the claimed noncompliance involved willfulness, fault, or bad faith," as well as whether there are lesser available sanctions. *Id.* at 1247–48 (brackets and internal quotations omitted); *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 946 (9th Cir. 1993) (holding that, in order to justify dismissal under Rule 37, "the losing party's non-compliance must be due to willfulness, fault, or bad faith"); *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983) (terminating sanctions "authorized only where the failure to comply is due to willfulness, bad faith, or fault of the party").[3]

/////

---

[3] Nevertheless, decisions on the appropriateness of sanctions are given "particularly wide latitude." *Yeti by Molly, Ltd.*, 259 F.3d at 1106; *see also Ollier v. Sweetwater Union High Sch. Dist.,* 768 F.3d 843, 859 (9th Cir. 2014).

10

Defendant asserts the volume of records delayed their production, as did the fact that those in control of the hospital only took over operations in 2014 and therefore lacked familiarity with defendant's billing records. (Doc. No. 71 at 5.) The court is again unconvinced by this explanation. As previously stated, defendant knew from the outset of the case that an analysis of the patient billing records would be crucial both to its anticipated defense to plaintiff's claim and in support of its own counterclaim. The fact the current administrators began in their positions in 2014 is no justification either, as it shows they had at least two years between then and the close of discovery in this case to gain some understanding of the hospital's billing records. Moreover, the hospital management was represented by counsel in this case, who could advise them of what records had to be produced in order to meet their discovery obligations. Defendant jointly proposed the original deadline for discovery, and subsequently secured two extensions of that deadline, once by stipulation and once by *ex parte* application. (*See* Doc. Nos. 12, 32, 46.) Nevertheless, defendant still failed either to timely produce the discovery it now seeks to rely upon or to make additional timely requests to extend the discovery deadlines.

Nor can it be said that defendant's failure to disclose harmless here. Defendant asserts its failure to disclose "has not permanently denied [plaintiff] the ability to obtain and utilize relevant evidence. Nor has it prevented [plaintiff] from filing a dispositive motion." (Doc. No. 71 at 15–16.) However, the *permanent* denial of plaintiff's ability to obtain the new evidence is not the sole measure of harm. Indeed, if discovery is re-opened in this action, plaintiff's summary judgment motion will effectively have been prevented and both its time and the court's time will have been wasted. More importantly, defendant's failure to produce discovery has unreasonably delayed resolution of plaintiff's claim, pursuant to which it sought payment for admittedly unpaid invoices for work it performed a mounting number of years ago. *See In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1236 (9th Cir. 2006) ("Prejudice from unreasonable delay is presumed."). In order to accommodate this failure, the court would be compelled to re-open discovery and re-schedule proceedings on dispositive law and motion. *See Jackson v. United Artists Theatre Circuit, Inc.*, 278 F.R.D. 586, 595 (D. Nev. 2011) (delayed disclosure was less harmful because it did "not require that discovery be reopened"); *Flanagan v. Benicia*

11

*Unified Sch. Dist.*, No. CIV S-07-0333 LKK GGH, 2007 WL 2601413, at *2 (E.D. Cal. Sept. 6, 2007) (finding evidentiary sanctions not warranted because discovery cutoff had not yet passed); *see also Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997) (finding prejudice where plaintiffs failed to disclose documents until after discovery, "therefore depriv[ing defendants] of any meaningful opportunity to follow up on that information, or to incorporate it into their litigation strategy").

Plaintiff argues defendant has not acted with good faith in the discovery phase of this litigation, because it sought and received two extensions of the court's discovery deadline and still never produced the required documents. (Doc. No. 57-1 at 10–11, 15–16.) "'[D]isobedient conduct not shown to be outside the control of the litigant' is all that is required to demonstrate willfulness, bad faith, or fault." *Henry*, 983 F.2d at 948 (quoting *Fjelstad v. Am. Honda Motor Co., Inc.*, 762 F.2d 1334, 1341 (9th Cir. 1985)); *see also Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003); *Hobson v. Buncich*, No. 2:10-CV-429-TLS-PRC, 2013 WL 208934, at *6 (N.D. Ind. Jan. 16, 2013) (noting fault has been defined as "objective unreasonableness"). The only time defendant expressly claims to have acted in good faith in relation to this discovery was when it made belated disclosures to plaintiff in order to file its opposition to plaintiff's summary judgment motion. (Doc. No. 71 at 11) (identifying "additional productions" made "in good faith" during early January 2017). As far as the court is concerned, these were not "good faith" productions, but rather a very belated production of documents that should have been disclosed to plaintiff many months earlier.

Given the above, the court concludes defendant has acted in bad faith here. Defendant both failed to produce obviously necessary documents in discovery and failed to seek extensions of time in which to do so. This occurred despite defendant knowing the billing records would be relevant to plaintiff's claim and its counterclaim since the very beginning of the case. Further, defendant has acted with conscious regard—or disregard—of the discovery and other deadlines in this case throughout its pendency. For instance, in a joint status report filed on November 16, 2016, defendant indicated it made no effort to disclose additional records between the time it filed its *ex parte* application for an extension of time and when the court granted it. (*See* Doc. No. 51

at 5) ("TRMC could not reasonably move forward with the analyses until it knew that the Court would grant its *Ex Parte* Application ("Application") to continue the trial and other case deadlines."). Clearly defendant was aware of and acted consciously in relation to the deadlines in this case, and chose not to proceed with disclosures it was required to make when it was not in its own interest to do so. This is not a case of mistake, inadvertence, or even negligence. The failure to disclose here was both willful and in bad faith.

With this in mind, the court turns to whether there are lesser sanctions than the barring of defendant's evidence available to remedy the predicament this litigation is now in. Unfortunately there are none. For example, considering the facts to be established in the light the plaintiff presents or prohibiting defendant from disputing plaintiff's evidence are essentially the same sanction as simply refusing to consider defendant's evidence. Fed. R. Civ. P. 37(b)(2)(A)(i)–(ii). Imposition of monetary sanctions is likely ineffective here as well since, if plaintiff prevails, it is entitled to attorneys' fees pursuant to the parties' contract. (*See* Doc. No. 1-1 at 2) ("In the event of any default of the payment provision herein, [defendant] agrees to pay, in addition to any defaulted amount, all actual legal costs, including but not limited to, attorney fees, collection costs and court costs [plaintiff] has incurred to collect the overdue amount."). Defendant also offered to "consider" voluntarily reimbursing plaintiff for the attorneys' fees it spent bringing both the motion for sanctions and motion for summary judgment. (*See* Doc. No. 71 at 9.) However, such a modest imposition of sanctions would fail to incentivize diligence. Finally, any continuance or further delay of the resolution of this action would not be a sanction at all, as it is precisely the relief that defendant seeks.

In sum, defendant has failed to comply with its discovery obligations. It has not been diligent in producing the documents it was required to produce, and has not provided a persuasive justification for its lack of diligence. This bad faith failure to produce documents harmed plaintiff. Lesser evidentiary sanctions than barring consideration of this late-disclosed evidence would be ineffective here, and are therefore unwarranted. The court will not consider the documentary evidence of the four patient accounts supplied by defendant in considering whether summary judgment in favor of plaintiff is warranted here.

2. <u>Summary Judgment</u>

Because there is no admissible evidence in front of the court showing defendant would be able to meet its burden at trial on either its affirmative defenses or its counterclaim, plaintiff's motion for summary judgment as to those must be granted. *See Celotex*, 477 U.S. at 322 (summary judgment mandated "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"); *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). The court must, however, still determine whether plaintiff is entitled to summary judgment on its breach of contract claim, since it bears the ultimate burden on that claim at trial. *See Cristobal v. Siegel*, 26 F.3d 1488, 1491 (9th Cir.1994) (explaining that court can grant even an unopposed summary judgment motion only when "the moving party bears its burden of showing its entitlement to judgment").

The elements for a cause of action for breach of contract under California law are "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011); *see also Lewis v. You Tube, LLC*, 244 Cal. App.4th 118, 124 (2015); *Ponomarenko v. Shapiro*, 287 F. Supp. 3d 816, 828 (N.D. Cal. 2018). Defendant does not dispute the existence or validity of the parties' contract, or that plaintiff performed services under the contract after defendant notified it the contract would terminate in May 2015. (Doc. No. 62 at 4–6, 11–12.) Additionally, defendant does not dispute that it did not pay plaintiff for the services it rendered between October 2014 and May 2015. (*Id.* at 14–16.) Defendant's sole opposition was that plaintiff did not perform all of its contractual obligations, thereby discharging its obligation to pay. As explained above, none of the documentary evidence to which defendant points or on which its declarants' rely on summary judgment was disclosed to plaintiff, and it is therefore not admissible and cannot be considered by the court in resolving that

/////

/////

motion. Fed. R. Civ. P. 37(c)(1). Moreover, defendant has admitted each of the other elements of plaintiff's claim. This is sufficient to entitle plaintiff to summary judgment in its favor.[4]

However, for the reasons discussed below, even if defendant's evidence were admissible, the granting of summary judgment in favor of plaintiff would still be appropriate. "When a party's failure to perform a contractual obligation constitutes a material breach of the contract, the other party may be discharged from its duty to perform under the contract." *Brown v. Grimes*, 192 Cal. App. 4th 265, 277 (2011); *see also Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1602–03 (2012). The question of whether a breach is "material" is normally a determination for the factfinder. *Schellinger Bros. v. Cotter*, 2 Cal. App. 5th 984, 1002 (2016); *Brown*, 192 Cal. App. 4th at 277; *Superior Motels, Inc. v. Rinn Motor Hotels, Inc.*, 195 Cal. App. 3d 1032, 1051–52 (1987). However, materiality of a breach becomes a matter of law when there is only one reasonable conclusion to be reached from the facts presented. *See, e.g.*, *Target Corp. v. Wolters Kluwer Health, Inc.*, No. CV 15-6350-AB (FFMx), 2015 WL 12646483, at *7 (C.D. Cal. Dec. 16, 2015); *LocusPoint Networks, LLC v. D.T.V. LLC*, No. 14-cv-01278-JSC, 2015 WL 5043261, at *11 (N.D. Cal. Aug. 26, 2015); *Frank Lloyd Wright Found. v. Kroeter*, 697 F. Supp. 2d 1118, 1134 (D. Ariz. 2010).

California courts have noted that the breaching party's mental state and the timing of the breach may be factors to consider in determining whether a breach is material. *Schellinger Bros.*, 2 Cal. App. 5th at 1002; *Whitney Inv. Co. v. Westview Dev. Co.*, 273 Cal. App. 2d 594, 602 (1969). The following other factors are potentially relevant to this inquiry as well:

> (1) The extent to which the injured party will obtain the substantial benefit which he could have reasonably anticipated; (2) the extent to which the injured party may be adequately compensated in damages for lack of complete performance; (3) the extent to which the party failing to perform has already partly performed or made preparations for performance; (4) the greater or less hardship on the party failing to perform in terminating the contract; (5) the wilful, negligent, or innocent behavior of the party failing to perform; and (6) the greater or less uncertainty that the party failing to perform will perform the remainder of the contract.

---

[4] Since the court concludes that summary judgment is warranted as to plaintiff's breach of contract claim, defendant's counterclaim, and defendant's affirmative defenses, plaintiff's separate motion for terminating sanctions (Doc. No. 57) will be denied as moot.

15

*Sackett v. Spindler*, 248 Cal. App. 2d 220, 229 (1967). As the Ninth Circuit has commented, a breach will justify rescission or non-performance by the non-breaching party "only when it is 'of so material and substantial a nature that [it] affect[s] the very essence of the contract and serve[s] to defeat the object of the parties. . . . [The breach must constitute] a total failure in the performance of the contract.'" *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 586 (9th Cir. 1993) (quoting *Affiliated Hosp. Prods., Inc. v. Merdel Game Mfg. Co.*, 513 F.2d 1183, 1186 (2d Cir. 1975)) (alterations in original).

Even were the evidence presented by defendant in opposition to plaintiff's motion to be considered, summary judgment would be warranted on plaintiff's breach of contract claim. Defendant's controller Delbert Bryant declares defendant generated a log of all patient accounts, calculated the average payment received for a service within a given period of time, and then determined whether there was a "variance," i.e. an underpayment, between the average amount and the amount actually collected. (Doc. No. 64 at ¶¶ 31–34.) According to Bryant, defendant has been underpaid on the accounts relevant to this dispute by approximately $58.5 million. (*Id.* at ¶¶ 35–36.) However, defendant has presented virtually no evidence, admissible or otherwise, that any of these alleged underpayments are the fault of plaintiff. As plaintiff rightly points out, it contracted to provide certain billing and revenue cycle services, not to serve as a guarantor for the debts of defendant's patients. (*See, e.g.*, Doc. No. 1-1 at 9) (contract noting plaintiff "shall use its *commercially reasonable efforts* to bring accounts to final resolution") (emphasis added). At most, defendant identifies four underpaid accounts it believes were due to some breach by plaintiff,[5] which at most indicate it suffered approximately $11,000 in losses. (*See* Doc. No. 63

---

[5] The court by no means is convinced these records actually show the underpayments were caused by some action of plaintiff's. Defendant's chief operating officer and chief financial officer Alan Germany declares he identified three actions plaintiff was "required to take, but failed to do so," including "checking patient eligibility prior to or during patient's stay in the hospital," "ensuring claims are accurate and complete prior to submission to the payor," and "pursuing collection to conclusion." (Doc. No. 63 at ¶ 12.) Germany does not explain how he decided plaintiff was required to take these actions, as this language does not appear in the parties' contract. (*See, e.g.* Doc. No. 1-1 at 9–10) (noting plaintiff would "identify potential payer problems prior to service . . . and make every attempt to resolve the situation prior to service" and use "commercially reasonable efforts to bring accounts to final resolution"). Nevertheless, the court will presume this is what these records show for purposes of this discussion.

at ¶¶ 11–21, 25; Doc. No. 63-6 at 1.)

No reasonable factfinder could conclude $11,000 worth of underpayments constitutes a material breach of this contract. While it is unclear how much money plaintiff collected for defendant over the course of the entire contract, plaintiff did collect more than $17.5 million of payments for defendant between October 2014 and May 2015 alone.[6] (Doc. No. 62 at 17.) Underpayments of $11,000 would represent less than one-tenth of one percent of the value of the revenues collected by plaintiff for defendant during just the final seven months of the contract. There is no evidence before the court on summary judgment that any breach by plaintiff was willful, malicious, or even negligent in nature. *Schellinger Bros.*, 2 Cal. App. 5th at 1002. The parties mutually performed under the contract for almost four years (s*ee* Doc. No. 62 at 4, 11–12), suggesting there was no ongoing concern about plaintiff's performance. *Whitney Inv. Co.*, 273 Cal. App. 2d at 602 ("[A] slight breach at the outset may justify termination whereas a like breach later in performance may be deemed insubstantial."). Defendant obtained the substantial benefit of the bargain, receiving at least $17.5 million in revenues with, at most, an $11,000 underpayment. *See Sackett*, 249 Cal. App. 2d at 229. Plaintiff continued to render services under the contract through the termination date set by defendant, despite not receiving timely payments on its invoices. (Doc. No. 62 at ¶¶ 30, 37–39.) Thus, even were defendant's evidence to be considered, plaintiff would still be entitled to summary judgment because any purported breach for which defendant has supplied evidence is not material. *Rano*, 987 F.2d at 586.

For all of these reasons, summary judgment in plaintiff's favor is warranted on its breach of contract claim, and plaintiff will be awarded the undisputed amount of $724,385.08 invoiced and not paid. (*See* Doc. No. 62 at 15–16.) Plaintiff also seeks an award of interest, costs, and attorneys' fees. (Doc. No. 41 at 20.) Within thirty (30) days following service of this order, plaintiff is directed to file a notice of motion and motion, noticing that motion for hearing on the court's calendar setting out its request for interest, costs, and attorneys' fees.

---

[6] Assuming the collection rate stayed relatively consistent with these values, plaintiff could easily have collected more than $120 million for defendant over the course of the contract.

17

**CONCLUSION**

Given all of the foregoing:

1. Defendant's request under Rule 56(d) to reopen discovery (Doc. No. 61) is denied;
2. Plaintiff's objections to the documentary evidence attached to Alan Germany's affidavit (Doc. Nos. 40-1–40-6) are well-founded, and that evidence is deemed inadmissible on summary judgment pursuant to Rule 37;
3. Plaintiff's motion for summary judgment (Doc. No. 61) is granted as to its breach of contract claim, defendant's affirmative defenses, and defendant's counterclaim;
4. Judgment is entered in favor of plaintiff and against defendant in the amount of $724,385.08;
5. Plaintiff may file a motion within thirty (30) days of the entry of final judgment seeking prejudgment interest, attorneys' fees, and costs pursuant to Federal Rule of Civil Procedure 54 and Local Rule 293;
6. Plaintiff's motion for terminating sanctions (Doc. No. 57) is denied as moot; and
7. The Clerk of the Court is directed to enter judgment.

IT IS SO ORDERED.

Dated: **June 12, 2018**

*Dale A. Drozd*
UNITED STATES DISTRICT JUDGE