UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIRSTSOURCE SOLUTIONS USA, LLC, | No. 1:15-cv-01136-DAD-EPG |
| Plaintiff, | |
| v. | ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND INTEREST |
| TULARE REGIONAL MEDICAL CENTER, | |
| Defendant. | (Doc. No. 98) |
| TULARE REGIONAL MEDICAL CENTER, | |
| Counter-claimant, | |
| v. | |
| FIRSTSOURCE SOLUTIONS USA, LLC, | |
| Counter-defendant. | |

This matter involves a breach of contract dispute concerning the provision of various fee collection services performed by plaintiff and counter-defendant Firstsource (hereinafter "plaintiff" or "Firstsource") on behalf of defendant and counter-claimant Tulare Regional Medical Center (hereinafter "defendant" or "TRMC"). This matter is currently before the court on plaintiff's motion for attorneys' fees, costs, and interest. (Doc. Nos. 98, 105.) Following

submission of requested supplemental briefing, on December 18, 2018, the case again came before the court for hearing. Attorneys Emily Feinstein and Patrick Proctor-Brown appeared telephonically on behalf of plaintiffs, and attorney Benjamin Nicholson appeared in person on behalf of defendants. Having considered the parties' briefing, and having heard the oral arguments of counsel, the court will grant plaintiff's motion in part.

## BACKGROUND

This case concerns a dispute over billing-related services provided by plaintiff to defendant. Virtually all the salient facts were undisputed. The parties entered a valid contract on November 18, 2010 in which plaintiff agreed to perform billing and other business services for defendant. (Doc. No. 62 at 4–6.) Plaintiff was to receive a contingency fee of 3.75 percent of the total fee payments that it collected for defendant. (*Id.* at 6.) The contract stated defendant would pay invoices monthly and be liable for a service charge of 1.5 percent per month for any invoices unpaid after more than thirty days. (*Id.* at 9.) The contract also included a fee-shifting provision that states: "In the event of any default of the payment provision herein, [TRMC] agrees to pay, in addition to any defaulted amount, all actual legal costs, including but not limited to, attorney fees, collection costs and court costs Firstsource has incurred to collect the overdue amount." (Doc. No. 98-1 at 4.)

Defendant terminated the agreement by letter on September 11, 2014, to be effective May 31, 2015. (Doc. No. 62 at 11.) Plaintiff continued to perform services for defendant between September 11, 2014 and May 31, 2015. (*Id.* at 12.) Nevertheless, defendant failed to pay plaintiff for services rendered during this period. (*Id.* at 14–15.) Plaintiff invoiced defendant for $724,385.08, which defendant refused to pay. (*Id.* at 16–23.) Plaintiff began assessing late fees on unpaid invoices in January 2015. (*Id.* at 25.)

Plaintiff filed this suit on July 21, 2015 alleging one claim for breach of contract in its complaint. (Doc. No. 1.)[1] On June 13, 2018, the court granted summary judgment in favor of plaintiff. (Doc. No. 93.) On July 12, 2018, plaintiff filed a motion for attorneys' fees. (Doc.

---

[1] The court discussed the procedural background of this case in more detail in a prior order. (*See* Doc. No. 93 at 2–3.)

Nos. 98, 99.)  Plaintiff's motion for attorneys' fees first came before the court for hearing on August 21, 2018.  (Doc. No. 104.)  During the hearing, the court granted both parties permission to submit supplemental briefing addressing the lodestar analysis.  Plaintiff submitted supplemental briefing on September 19, 2018.  (Doc. Nos. 105, 106.)  Defendant submitted an opposition and objections on October 2, 2018.  (Doc. Nos. 107, 108.)  Plaintiff submitted a reply on October 9, 2018.  (Doc. No. 109.)[2]

### DISCUSSION

Plaintiff argues that it is the prevailing party in this action, having both secured a judgment for the service fees that defendant failed to pay and defeated defendant's counterclaim. (Doc. No. 98-1 at 3.)  Therefore, plaintiff contends that it is entitled to reasonable attorneys' fees, actual legal costs, and prejudgment interest.  (*Id.*)

**A.     Contractual Agreement for Attorneys' Fees**

Plaintiff asserts that it should be awarded its actual attorneys' fees pursuant to the fee-shifting provision of the parties' contract.  Plaintiff argues it is entitled to an award in the amount of the attorneys' fees that it paid to its counsel (hereinafter "Quarles & Brady" or "plaintiff's counsel").  (Doc. No. 98-1 at 3–12.)

"In federal litigation, the American Rule generally precludes an award of attorneys' fees absent statutory authorization or an enforceable contractual fees provision."  *Golden Pisces, Inc. v. Fred Wahl Marine Const., Inc.*, 495 F.3d 1078, 1081 (9th Cir. 2007); *see also MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1281 (9th Cir. 1999) (describing the "American Rule" in which "each party must bear its own attorneys' fees in the absence of a rule, statute or contract authorizing such an award").

However, when there is an enforceable contractual fees provision, federal courts apply state law in awarding attorneys' fees.  *See Resolution Tr. Corp. v. Midwest Fed. Sav. Bank of Minot*, 36 F.3d 785, 800 (9th Cir. 1993) (noting that, where award of attorneys' fees was premised on contractual provision, "the district court should have applied California law in

---

[2]  On March 14, 2019, the Clerk of the Court entered a bill of costs in which $513.00 of costs were taxed against defendant.  (Doc. No. 113.)

interpreting the attorneys' fees provision in the contract") (citing *Hellon & Assoc., Inc. v. Phoenix Resort Corp.*, 958 F.2d 295, 300 (9th Cir. 1992)); *Krug v. Wells Fargo Bank, N.A.*, No. 11–CV–5190 YGR, 2012 WL 3257814, at *1 (N.D. Cal. Aug. 8, 2012) ("State law governs the interpretation and application of contractual attorneys' fees provisions."); *Lyon Fin. Servs., Inc. v. Tomlinson*, No. CV–10–0067–PHX–JAT, 2011 WL 977702, at *1 (D. Ariz. Mar. 18, 2011) ("Where a contract provides for an award of fees to the prevailing party, both California and Arizona state law require the Court to honor that provision and award fees, as stipulated in the contract.").

California law permits parties to include provisions in contractual agreements that explain how the parties wish to account for attorneys' fees that may arise from disputes related to the contract. *See* CAL. CIV. PROC. CODE §§ 1021, 1033.5(a)(10); *Xuereb v. Marcus & Millichap, Inc.*, 3 Cal. App. 4th 1338, 1341 (1992) ("It is quite clear from the case law interpreting Code of Civil Procedure section 1021 that parties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract."). Courts look to the language of the agreement between the parties to determine the extent of attorneys' fees covered. *See Monster, LLC v. Superior Court*, 12 Cal. App. 5th 1214, 1226 (2017) ("[Although] [t]he parties to a contract are free to agree that one or more of them shall recover their attorney fees if they prevail on a tort or other noncontract claim, . . . the right to recover those fees depends solely on the contractual language.") (quoting *Brown Bark III, L.P. v. Haver*, 219 Cal. App. 4th 809, 820 (2013)); *Cruz v. Ayromloo*, 155 Cal. App. 4th 1270, 1277 (2007) (awarding attorneys' fees for tort claims based on "the broad language of the attorneys' fees clause in the lease agreement [which] covered all fees in any civil action stemming from the lease"); *Thompson v. Miller*, 112 Cal. App. 4th 327, 336–37 (2003) (holding that an attorneys' fee award appropriate with respect to tort claims related to contractual provisions, based on the broad language of contract); *Santisas v. Goodin*, 17 Cal. 4th 599, 608 (1998) ("If a contractual attorney fee provision is phrased broadly enough . . . it may support an award of attorney fees to the prevailing party in an action alleging both contract and tort claims."); *Gerard v. Salter*, 146 Cal. App. 2d 840, 848 (1956) (disallowing attorneys' fees for an arbitration because

the contract stated reasonable attorneys' fees would be awarded if either party brought suit "in court").

In this case, the parties' contract contains the following operative language: "In the event of any default of the payment provision herein, [defendant] agrees to pay, in addition to any defaulted amount, all actual legal costs, including but not limited to, attorney fees, collection costs and court costs [plaintiff] has incurred to collect the overdue amount." (Doc. No. 1-1 at 2.) Defendant argues that only the attorneys' fees incurred in "collect[ing] the overdue amount" may be included in an attorney fee award under the contract, and therefore any time spent defending against its counterclaim should not be included therein. (Doc. No. 100 at 7–8.) In its supplemental briefing, defendant argues that "[g]iven the simplicity of the complaint and the complexity of the counterclaim" one third of the attorneys' fees should be apportioned to the complaint, and two thirds should be apportioned to the counterclaim. (Doc. No. 107 at 6.)

Adopting defendant's position in this regard, however, would assign an impossible task to the court. As plaintiff correctly notes, defendant's single counterclaim for breach of contract was precisely the same as its affirmative defense that plaintiff had materially breached the contract. (*Compare* Doc. No. 6 at 4 (alleging an affirmative defense of anticipatory repudiation based on plaintiff's material breach of the contract), *with id.* at 7 (alleging a counterclaim based on plaintiff's purported material breach of the contract).) In its order granting summary judgment in favor of plaintiff, the court concluded that it would not consider evidence that the defendant failed to disclose during discovery and, accordingly, rejected both defendant's counterclaim and its affirmative defense due to the absence of admissible evidence. (*See* Doc. No. 93 at 9–14.) As discussed in that order, the untimely evidence which defendants put forward was "the sole evidence before the court supporting defendant's opposition, its affirmative defenses, and its counterclaim." (*Id.* at 10.) Therefore, there is no logical way to separate the attorney time expended litigating the counterclaim from that spent litigating the affirmative defense. *See Reynolds Metals Co. v. Alperson*, 25 Cal. 3d 124, 129–30 (1979) ("Attorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed."); *Amtower v. Photon Dynamics,*

*Inc.*, 158 Cal. App. 4th 1582, 1604 (2008) ("[A]llocation is not required when the issues are 'so interrelated that it would have been impossible to separate them into claims for which attorney fees are properly awarded and claims for which they are not.'") (quoting *Akins v. Enterprise Rent-A-Car Co.*, 79 Cal. App. 4th 1127, 1133 (2000)); *Yield Dynamics, Inc. v. TEA Sys. Corp.*, 154 Cal. App. 4th 547, 577 (2007) (same).

Therefore, the court will not attempt to allocate attorney time between that which was necessary to litigate plaintiff's claim and that reasonably expended to defend against defendant's counterclaim. Plaintiff may collect attorneys' fees for time expended on both fronts.

**B.    Lodestar Method**

Plaintiff's original motion argued that attorneys' fees should be awarded based on the actual legal fees paid. (*See* Doc. No. 98-1 at 3.) At the hearing on August 21, 2018, the court indicated that a lodestar analysis was necessary to evaluate the reasonable attorneys' fees in this case and permitted plaintiff the opportunity to provide supplemental briefing addressing this issue. (*See* Doc. No. 104.) In that supplemental briefing, plaintiff provided a lodestar analysis and argued that the amount sought for attorneys' fees, based on the fees actually paid by plaintiff, is reasonable when cross-checked with the lodestar amount. (*See* Doc. No. 105 at 2–10.)

Courts typically use the traditional lodestar approach to calculate attorneys' fees awardable under a contract. *See, e.g.*, *Williams v. Wells Fargo Bank, N.A.*, No. 5:13-cv-03387-EJD, 2017 WL 4877439, at *1–2 (N.D. Cal. Oct. 30, 2017) (using lodestar method to determine contractual attorneys' fees); *Salameh v. Tarsadia Hotel*, No. 09cv2739–GPC(BLM), 2014 WL 3797283, at *2 (S.D. Cal. July 31, 2014) ("Attorneys' fees under California Civil section 1717, the provision for attorney's fees in a contract action, are calculated using the lodestar method."); *Meredith v. e-MDs*, No. 14–cv–00899 JAM CMK, 2014 WL 2612112, at *4 (E.D. Cal. June 11, 2014) ("Traditionally, statutory/contractual attorneys' fees are calculated using the 'lodestar' calculation."); *Suretec Ins. Co. v. BRC Const., Inc.*, No. 2:11–cv–2813 KJM AC, 2013 WL 4676334, at *1 (E.D. Cal. Aug. 30, 2013) ("In California, 'the fee setting inquiry . . . ordinarily begins with the "lodestar," i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate.'") (quoting *PLCM Grp., Inc. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000)).

"The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Camacho*, 523 F.3d at 978 (quoting *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001)); *see also Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) ("The number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client."). Applying these standards, "a district court should exclude from the lodestar amount hours that are not reasonably expended because they are 'excessive, redundant, or otherwise unnecessary.'" *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

### 1. Reasonable Hourly Rates

In assessing fee applications, the reasonable hourly rates are calculated according to the prevailing market rates in the relevant legal community. *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013); *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) ("We have held that '[i]n determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.'") (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986)); *Van Skike v. Dir., Office of Workers' Comp. Programs*, 557 F.3d 1041, 1046 (9th Cir. 2009); *Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006). Typically, the "relevant legal community" is the forum district[3] and the local hourly rates for similar work should normally be employed. *Gonzalez*, 729

---

[3] The court recognizes that judges in the Eastern District of California frequently distinguish between the Fresno and Sacramento communities in determining hourly rates. The general rule for awarding attorneys' fee rates, however, is that "the rates of attorneys practicing in the forum *district*" are used. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) (emphasis added). The ultimate task of the court is to discern the "prevailing market rates in the relevant community." *See Gonzalez*, 729 F.3d at 1205 (quoting *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005)). This court has located no authority indicating that hourly rates for attorneys in Sacramento may not be used to guide the court's award of such fees in cases originating in the Fresno, particularly in specialized fields of litigation. Again, the typical approach looks to the *district* in which the court sits. *See Gonzalez*, 729 F.3d at 1206 (noting the appropriate rate was "the market rate prevailing in the Central District of California"); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (using the "Northern District of California" as the relevant legal community); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir.

F.3d at 1205; *Prison Legal News*, 608 F.3d at 454; *Gates v. Rowland*, 39 F.3d 1439, 1449 (9th Cir. 1994); *Deukmejian*, 987 F.2d at 1405.

The parties state that the following hourly rates represent the prevailing hourly rates in the Eastern District of California:

| Title | Plaintiff's Requested Rates | Defendant's Requested Rates [4] |
|---|---|---|
| Partners (20+ years) | $370-$575/hour | $400/hour |
| Partners (10-20 years) | | $300/hour |
| Associates (4-10 years) | $275-$325/hour | $250/hour |
| Associates (0-3 years) | | $200/hour |
| Paralegals | $230-$245/hour | $150/hour |
| Litigation Support | $170-$245/hour | $0/hour |

First, defendant argues that plaintiff's requested rates are too high to reflect the prevailing rates within Fresno. (Doc. No. 107 at 7–8.) Defendant argues that the cases and hourly rates cited by plaintiff reflect a lodestar cross-check in a class action settlement context and are therefore inapplicable (*id.* at 8–9), and that plaintiff's use of the "Laffey Matrix" methodology is also inapplicable (*id.* at 9–10). Additionally, defendant argues that the court should not award

/////

2008) (same); *Davis v. Mason County*, 927 F.2d 1473, 1488 (9th Cir. 1991) (using the Western District of Washington as the relevant local community), *overruled on other grounds as recognized in Davis v. City & County of San Francisco*, 976 F.2d 1536, 1556 (9th Cir. 1992). *But see Vega v. Eatherford U.S. LP*, No. 1:14-cv-01790-JLT, 2016 WL 7116731, at *16 (E.D. Cal. Dec. 7, 2016) (concluding that within the Eastern District of California, the appropriate forum for determining the lodestar rate is the division of the district in which the case is filed) (quoting *Jadwin v. County of Kern*, 767 F. Supp. 2d 1069, 1129 (E.D. Cal. 2011)). Finally, the undersigned would note that according to the Local Rules of this court, this is not a district court with separate divisions, as many are, but rather is a single district sitting in designated locations for venue purposes. *See* Local Rule 120.

[4] Defendant attaches a declaration from James H. Wilkins, a civil litigation attorney at Wilkins, Drolshagen & Czeshinski, LLP in Fresno, California, who provided an opinion regarding the reasonable rates in this district based on his experiences and the relevant legal authority. (*See* Doc. No. 100-1 at 4–5.)

out-of-district attorney fee rates in this case, because competent local counsel was available to represent plaintiff.  (*Id.* at 10–12.)

### a.    Lodestar Cross-Check

In support of its argument that Quarles & Brady's actual billing rates reflect the prevailing attorney fee rates in this district, plaintiff points to several cases within this district where similar rates have been found to be reasonable.  (Doc. No. 105 at 3–4.)  Defendant, however, counters that in those cases relied upon by plaintiff, the judges of this district were merely conducting lodestar cross-checks in the class action litigation context.  (Doc. No. 107 at 8–9.)

In class actions, "the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method" in awarding attorneys' fees.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  When district courts award attorneys' fees based upon the percentage of the fund, they may also cross-check such an award by calculating the lodestar, which "may provide a useful perspective on the reasonableness of a given percentage award."  *Id.* at 1051.  Where a lodestar is merely being used as a cross-check, the court "may use a 'rough calculation of the lodestar.'"  *Bond v. Ferguson Enters., Inc.*, No. 1:09–cv–1662 OWW MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (quoting *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06–04149 MMM (SHx), 2008 WL 8150856 (C.D. Cal. July 21, 2008)).  In the context of a lodestar cross-check, hourly rates are merely used as a secondary method to evaluate the reasonableness of attorneys' fees based upon the percentage of the fund and are not subject to the scrutiny of a standard lodestar analysis.  Therefore, the court is not persuaded that such calculations of hourly rates are a fair representation of the prevailing market rate as suggested by plaintiff.

Plaintiff also argues that Baker & Hostetler, defendant's counsel in this action, charges higher rates than those charged by plaintiff's counsel, thereby suggesting that the rates actually paid to plaintiff's counsel were reasonable.  (Doc. No. 105 at 3–4.)  The court finds this argument to miss the mark.  Defendant has not argued that the hourly rates for its counsel are on par with the prevailing market rate.  Therefore, plaintiff has provided no authority to support the notion that the rates it paid its counsel represent the prevailing market rate in this legal community.

b. *Availability of Local Counsel*

Alternatively, plaintiff argues that above-market rates should be applied because local counsel was not available to handle this case on its behalf. (Doc. No. 105 at 7–9.) Defendant argues that because local counsel was available to represent plaintiff, out-of-town rates should not be awarded. (Doc. No. 107 at 10–12.)

Rates from outside the forum district "may be used 'if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.'" *Barjon v. Dalton*, 132 F.3d 496, 499 (9th Cir. 1997) (quoting *Deukmejian*, 987 F.2d at 1405). Judges of the Eastern District of California have based attorney fee awards on out-of-forum hourly rates where (1) there is a pre-existing relationship between counsel and plaintiff in litigation relating to this matter; (2) there is a lack of attorneys who handle the particular type of case being brought; or (3) plaintiff demonstrates that it made an affirmative attempt to secure local counsel and was unable to do so, for varying reasons. *See Wright v. Tehachapi Unified Sch. Dist.*, No. 1:16-cv-01214-JLT, 2017 WL 3334015, at *4–5 (E.D. Cal. Aug. 4, 2017) (awarding out-of-forum rates based on unavailability of "private attorneys who focus on representing disabled school children who reside in Tehachapi and Kern County") (internal quotations omitted); *Shany Co., Ltd. v. Crain Walnut Shelling, Inc.*, No. 2:11–CV–01112–KJM–EFB, 2015 WL 351660, at *6 (E.D. Cal. Jan. 23, 2015) (awarding out-of-forum rates where counsel was retained prior to litigation to represent it at arbitration in a different forum); *S. Yuba River Citizens League & Friends of River v. Nat'l Marine Fisheries Serv.*, No. CIV. S–06–2845 LKK/JFM, 2012 WL 1038131, at *6 (E.D. Cal. Mar. 27, 2012) (awarding out-of-forum rates where plaintiffs had sent letters to seven law firms soliciting representation but were unable to secure local counsel); *Yenidunya Invs., Ltd. v. Magnum Seeds, Inc.*, No. 2:11–1787 WBS, 2012 WL 538263, at *7 (E.D. Cal. Feb. 17, 2012) (granting request to use out-of-forum rates because attorneys had prior history with both the client and the dispute at issue) , *aff'd*, 562 Fed. App'x 560 (9th Cir. 2014); *Edwards v. City of Colfax*, No. CIV S–07–2153 GEB EFB, 2011 WL 572171, at *8 (E.D. Cal. Feb. 15, 2011) (awarding out-of-forum rates based on declarations establishing that they sought representation from ten

attorneys, but each either lacked the requisite experience, had conflicts of interest, or were otherwise unwilling to take the case); *Roe v. Saenz*, No. CIV–S–97–0529DFL JFM, 2000 WL 33128689, at *3 (E.D. Cal. Nov. 20, 2000) (awarding out-of-forum rates based on declarations from plaintiff that there "is no private market for contingent public benefits class action litigation").

Here, plaintiff states that this case required implementing a rigorous security program and that of the three local firms that potentially had the capacity to litigate this case, none were appropriate for various reasons. (Doc. No. 105 at 7–9.) However, plaintiff provides no evidence that it ever consulted these local law firms. Indeed, at the hearing, plaintiff's counsel acknowledges that it was retained for this case due to a preexisting relationship with plaintiff for healthcare litigation and could not represent whether Firstsource sought out local counsel for this case before retaining Quarles & Brady. Though courts have, at times, awarded out-of-market rates to accommodate plaintiffs that have preexisting relationships with certain attorneys, they have done so in situations when counsel had "prior dealings with both parties in [the] dispute . . .." *Yenidunya Invs., Ltd.*, 2012 WL 538263, at *7 (out-of-market rates awarded to San Francisco-based law firm because "[t]he attorneys . . . therefore had already had developed experience and expertise on the facts underlying this specific case."). Here, there is no indication that Quarles & Brady had any developed experience or expertise on the facts underlying this particular case and merely demonstrated some "previous experience with Firstsource and its industry . . .." (Doc. No. 109 at 5.)

For these reasons, the court will decline to award out-of-market attorney fee rates based on the rationale that local counsel was not available to Firstsource.

> c. *Comparisons to Madison and Milwaukee*

Next, defendants argue that plaintiff's representations of prevailing hourly rates in the Eastern District are improperly based on comparisons to rates in the Madison and Milwaukee, Wisconsin markets. (Doc. No. 107 at 9–10.) In this regard, plaintiff cited to the decision in *Trujillo v. Singh*, No. 1:16-cv-01640-LJO-EPG, 2017 WL 1831941, at *2 (E.D. Cal. May 8,

/////

2017), in which the court employed the Laffey Matrix[5] and United States Bureau of Labor Statistics ("BLS data")[6] to conclude that the prevailing wage in the Fresno legal market was $300 per hour for an attorney who had been practicing for over fifteen years and between $95–$115 per hour for paralegals.  Plaintiff attempts to use a similar analysis here.  According to the BLS data, Fresno and Madison have comparable hourly mean wage rates for attorneys.  (*See* Doc. No. 105 at 9.)  Therefore, plaintiff reasons that the rates for plaintiff's counsel in Madison and Milwaukee, their home cities, are also the reasonable rates in Fresno.  (*Id.*)

Even if the court were to be inclined to adopt this analysis, it would only be sound if plaintiff can show that the rates for Quarles & Brady in Madison and Milwaukee reflect the "prevailing market rates in the relevant community and [are] in line with [the rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Shirrod v. Dir., Office of Workers' Comp. Programs*, 809 F.3d 1082, 1086 (9th Cir. 2015) (internal quotation marks omitted).  Plaintiff makes no such representation and presents no such evidence.  Therefore, the court is not persuaded by the argument that, based on BLS data, attorney fee rates in Madison and Milwaukee should also be applied in this district.

      *d.*      *Reasonable Rates*

There is limited precedent within the Eastern District of California with respect to the appropriate hourly rate charged specifically in healthcare litigation.  The court's research has revealed only one such case, in which that court acknowledged the "dearth of cases addressing the market rate for a healthcare attorney in the Eastern District" and applied prevailing market

---

[5]  The Laffey Matrix is a "widely recognized compilation of attorney and paralegal rate data . . ." that reflects prevailing legal rates in the Washington, D.C. and Baltimore, Maryland legal communities.  *Trujillo v. Singh*, No. 1:16-cv-01640-LJO-EPG, 2017 WL 1831941, at *2 (E.D. Cal. May 8, 2017); *see also* https://www.justice.gov/usao-dc/file/796471/download (last visited June 14, 2019).

[6]  The United States Bureau of Labor Statistics publishes wage estimates for various metropolitan and nonmetropolitan areas in the United States, organized by occupation.  *See* https://www.bls.gov/oes/current/oessrcma.htm (last visited June 14, 2019).  With this information, the court can compare the wage estimates for attorneys in Madison and Milwaukee, Wisconsin (the home cities for plaintiff's counsel) and attorneys in Fresno, California.  (*See* Doc. No. 105 at 8–9.)

rates for civil rights attorneys. *See Cal. Ass'n of Rural Health Clinics v. Douglas*, No. 2:10-cv-00759-TLN, 2014 WL 5797154, at *3 (E.D. Cal. Nov. 6, 2014) (awarding hourly fees up to approximately $400 per hour for attorneys with approximately thirty years of experience in a case involving healthcare litigation). However, in determining the appropriate hourly rate, this court is not confined solely to considering cases involving the same area of law. Indeed, the Ninth Circuit has suggested that it would constitute error to do so. *See Camacho*, 523 F.3d at 981 (remanding a case brought under the Fair Debt Collection Practices Act to the district court for a determination of the prevailing hourly rate and instructing the court that it "should not restrict its analysis to FDCPA cases"); *Prison Legal News*, 608 F.3d at 455 (stating that "the proper scope of comparison . . . extends to all attorneys in the relevant community engaged in 'equally complex Federal litigation,' no matter the subject matter") (quoting *Blum*, 465 U.S. at 895 n.11).

Cases involving other areas of law provide more context as to the appropriate hourly rate in this case. Defendant cites to several cases in which courts in this district have awarded hourly rates that are lower than those requested by plaintiff. *See Hall v. FCA US LLC*, No. 1:16-cv-0684-JLT, 2018 WL 2298431, at *7 (E.D. Cal. May 21, 2018) (awarding attorneys' fees ranging from $300/hour to $175/hour in an action pursuant to the Song-Beverly Act); *TBK Bank, SSB v. Singh*, No. 1:17-cv-00868-LJO-BAM, 2018 WL 1064357, at *7 (E.D. Cal. Feb. 23, 2018) (recommending that motion for default judgment be granted and awarding attorneys' fees ranging from $400/hour to $150/hour in a contract dispute), *report and recommendation adopted*, 2018 WL 3055890 (E.D. Cal. Mar. 21, 2018).

However, higher hourly rates have been awarded in other Eastern District cases involving various other forms of complex litigation, including consumer law or employment litigation.[7] *See Smith v. Gen. Info. Servs., Inc.*, No. 1:17-cv-00542-DAD-SAB, 2019 WL 2106171, at *3 (E.D. Cal. May 14, 2019) (awarding $400 per hour for an attorney with more than ten years of experience practicing consumer law); *N.L. ex rel. Lemos v. Credit One Bank, N.A.*, No. 2:17-cv-

---

[7] The court may look to recent decisions to determine whether the rates requested by plaintiff's counsel are supported. *See United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) ("[R]ate determinations in other cases . . . are satisfactory evidence of the prevailing market rate.")

01512-JAM-DB, 2019 WL 1428122, at *5 (E.D. Cal. Mar. 29, 2019) (approving an hourly rate of $400 for an attorney with nine years' experience in a case involving the Telephone Consumer Protection Act and the Rosenthal Fair Debt Collection Practices Act); *Early v. Keystone Rest. Grp.*, LLC, No. 2:16-cv-00740-JAM-DB, 2019 WL 918211, at *5 (E.D. Cal. Feb. 25, 2019) (stating that "the relevant market in this case is the rate prevailing in the Eastern District of California" and approving an hourly rate of $530 in an employment discrimination case for an attorney with over thirty years of experience).

Based on the skill and experiences of plaintiff's counsel and the arguments presented by the parties, the court concludes that the following attorneys' fees rates are appropriate in this case.

| Title | Plaintiff's Requested Rate | Defendant's Proposed Rate | Applicable Rate |
|---|---|---|---|
| Partners (20+ years) | $370-$575/hour | $400/hour | $450/hour |
| Partners (10-20 years) | | $300/hour | $400/hour |
| Associates (4-10 years) | $275-$325/hour | $250/hour | $300/hour |
| Associates (0-3 years) | | $200/hour | $250/hour |
| Paralegals | $230-$245/hour | $150/hour | $200/hour |
| Litigation Support | $170-$245/hour | $0/hour | $0/hour[8] |

[8] Defendant argues that clerical tasks performed by litigation support staff should be excluded from the lodestar calculation because tasks related to the preparation of documents are not compensable as legal fees. (Doc. Nos. 100 at 12; 107 at 8.) The court agrees. *See Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) ("[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."); *Hall*, 2018 WL 2298431, at *4 ("Courts have discounted paralegal billing entries for "clerical tasks" such as "filing, transcript, and document organization time.") (citing *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009)); *Campbell v. Nat'l Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1105 (N.D. Cal. 2010) ("Clerical and secretarial work is not compensable as attorneys' fees") (citing *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1543 (9th Cir. 1992), *vacated in part on other grounds,* 984 F.2d 345 (9th Cir. 1993). Plaintiff does not contest this argument. Previously, plaintiff indicated that the work of several litigation support staff members was included in the lodestar analysis. (*See* Doc. No. 99 at ¶ 14.) The court understands that litigation support staff members in this case prepared electronic document databases for review. Therefore, all work conducted by Francesco Howard (Manager of Litigation Support), Kevin Mical (former Manager of Litigation Support), Laura Olsen Dugan (Senior Legal Research Specialist), and Terrill Tyler (Litigation Support Specialist) will be excluded from the court's lodestar analysis because it constitutes nonlegal clerical work that is not compensable as attorneys' fees.

1    2.    <u>Hours Reasonably Expended</u>

2         *a.    Block-billing*

3         Defendant next argues that plaintiff's counsel expended an unreasonable number of hours

4    during the litigation, largely attributable to block-billing. (Doc. No. 107 at 13–14.) "'Block

5    billing' is 'the time-keeping method by which each lawyer and legal assistant enters the total

6    daily time spent working on a case, rather than itemizing the time expended on specific tasks.'"

7    *Welch v. Metro. Life Ins.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007). A federal court may

8    appropriately impose a "haircut" percentage reduction that is "no greater than 10 percent . . .

9    based on its exercise of discretion and without a more specific explanation." *Moreno v. City of*

10   *Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Block-billing warrants a reduction in the

11   number of hours spent on a matter where, because of the manner of billing, the court cannot

12   ascertain whether such hours could "reasonably be billed to a private client." *Gonzalez*, 729 F.3d

13   at 1202. The court has reviewed the legal fee invoices and concludes that they do not prevent the

14   court from understanding whether the time reflected was reasonably billed. (*See, e.g.* Doc. No.

15   99-3 at 18) (billing 2.5 hours on one date for "Finish Rule 26 report; continue working on initial

16   disclosures; email with Chow"). Indeed, these invoices *were* billed to plaintiff – a private client –

17   which paid these bills, lending credence to their reasonableness. The court concludes that no

18   reduction is warranted here for block-billing.

19        *b.    Overstaffing*

20        Defendant next argues that the case was overstaffed by plaintiff's counsel, because they

21   had thirteen different attorneys working on the matter at various points, and that every new

22   attorney assigned to work on the matter needed to first spend time getting up to speed. (Doc. No.

23   100 at 18–19.) According to defendant, the court should either reduce the overall award by ten

24   percent due to these inefficiencies or deduct $23,660 for certain specified instances of

25   overstaffing. (*Id.* at 19.) Plaintiff explains that it did not overstaff the case, noting that only five

26   attorneys spent more than twenty-five hours working on the matter, and only three spent more

27   than one hundred hours. (Doc. No. 102 at 8.) Plaintiff notes that certain partners were brought in

28   for very limited purposes, such as attorney Jon Hackbarth, who spent twenty-four minutes

advising about arbitration clauses in federal court, and attorney Kerry Moskol, who spent forty-eight minutes advising on issues related to the confidentiality of medical records.  (*Id.*)  This, according to plaintiff, is actually evidence of conscientious billing.  (*Id.*)

Certainly, overstaffing can be a basis for reducing the award of attorneys' fees.  *See Hensley*, 461 U.S. 434 (noting that "[c]ases may be overstaffed" and that counsel must "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary"); *Carpenters Pension Tr. Fund for N. Cal. v. Walker*, No. 12–cv–01447–WHO, 2015 WL 1050479, at *2 (N.D. Cal. Mar. 9, 2015) (reducing attorneys' fees by ten percent to account for overstaffing); *Trs. of Operating Engineers Tr. v. Diamond St. Sweepers*, No. CV 07–8394–GAF, 2009 WL 10676000, at *2 (C.D. Cal. Mar. 9, 2009) (noting that reasonable hours may be reduced under the lodestar "if the case was overstaffed and hours are duplicated") (quoting *Chalmers v. Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1985)).  At the same time, some duplication is necessary and inherent in litigation, and a reduction is not warranted simply because multiple attorneys work on a case.  *See Moreno*, 534 F.3d at 1112–13 (cautioning that "[f]indings of duplicative work should not become a shortcut for reducing an award without identifying just why the requested fee was excessive and by how much"); *Jefferson v. Chase Home Fin.*, No. C 06-6510 TEH, 2009 WL 2051424, at *4 (N.D. Cal. July 10, 2009) (finding that a reduction of attorneys' fee was not warranted where multiple staff worked on a case because "the bulk of the hours spent were from a few attorneys").

The distribution of hours among the attorneys for plaintiff in this case does not appear to warrant a general reduction for overstaffing.  Based upon the submissions before the court, it appears that two attorneys and one paralegal were primarily responsible for this case—Proctor-Brown, Feinstein, and Woida.  They were assisted to a fair degree by Janssen, with a few other attorneys and support staff providing occasional help.  Based upon those records, the court sees no basis for imposition of a generic percentage cut simply because numerous attorneys billed some time on the case.

Based on the analysis set forth above, the court arrives at the following lodestar calculations.

16

| Attorneys' Fee Motion<br>Invoices from March 13, 2015 to June 20, 2018 | | | |
|---|---|---|---|
| **Name and Years of Experience** [9] | **Court Determined Applicable Rate** | **Hours Billed** [10] | **Total Billed** |
| Daniel Janssen Partner (20+ years) | $450/hour | 98.4 | $44,280.00 |
| Brittney Ogden Partner (19 years) | $400/hour | 1.0 | $400.00 |
| Kerry Moskal Partner (18 years) | $400/hour | 0.8 | $320.00 |
| Emily Feinstein Partner (17 years) | $400/hour | 388.7 | $155,480.00 |
| Craig O'Laughlin Partner (15 years) | $400/hour | 9.1 | $3,640.00 |
| Alissa Castaneda Partner (10 years) | $400/hour | 32.3 | $12,920.00 |
| Mark Bina Partner (10 years) | $400/hour | 1.6 | $640.00 |
| Jonathan Hackbarth Partner (10 years) | $400/hour | 0.4 | $160.00 |
| Rachel Graham Associate (10 years) | $300/hour | 10.5 | $3,150.00 |
| Jennifer Hennessy Associate (7 years) | $300/hour | 3.6 | $1,080.00 |
| Thanhan Nguyen Associate (3 years) | $250/hour | 0.8 | $200.00 |
| Patrick Proctor-Brown Associate (3 years) | $250/hour | 510.7 | $127,675.00 |
| Marisa Berlinger Associate (2 years) | $250/hour | 4.1 | $1,025.00 |
| Xavier A. Santistevan Paralegal (25+ years of experience) | $200/hour | 35.9 | $7,180.00 |

[9] The information in this column is taken from defendant's opposition to plaintiff's motion for attorneys' fees, costs, and interest. (*See* Doc. No. 100 at 13–14.) Plaintiff has apparently not disputed defendant's representations of the experience levels of these legal professionals.

[10] The information in this column is taken from attorney Emily M. Feinstein's supplemental declaration submitted in support of the motion for attorneys' fees, costs, and interests. (*See* Doc. No. 106 at 5.)

| | | | |
|---|---|---|---|
| Donna Woida Paralegal (25+ years of experience) | $200/hour | 238.8 | $47,760.00 |
| Sybil Taylor Aytch Paralegal (25+ years of experience) | $200/hour | 11.1 | $2,220.00 |
| | **Original Fees (subtotal)** | **1347.80** | **$408,130.00** |

3.     Supplemental Attorneys' Fees

Plaintiff also seeks to collect supplemental attorneys' fees totaling $27,728.00.  (*See* Doc. Nos. 106 at 7; 106-1 at 1–13.)  Defendant appears to be under the impression that the supplemental fees are for the filing of supplemental briefing, which the court requested at the hearing on August 21, 2018.  (*See* Doc. No. 107 at 14.)  However, the billing records that plaintiff attaches to its supplemental briefing reflect time billed from June 1, 2018 to August 29, 2018,[11] and does not appear to relate to time spent on the supplemental briefing itself which was not filed until September 18, 2018 and October 9, 2018.  (*See* Doc. Nos. 106-1 at 11–12; 105; 109.)

In any event, it appears clear that the supplemental request seeks the award of fees in connection with attorney time expended on the pending motion for attorneys' fees.  Plaintiffs' counsel are entitled to such fees.  *See Thompson v. Gomez*, 45 F.3d 1365, 1366 (9th Cir. 1995) ("Recoverable attorney's fees may include fees incurred while doing work on the underlying merits of the action ("merits fees") as well as fees incurred while pursuing merits fees ("fees-on-fees")).  Therefore, the court will also award supplemental attorneys' fees based on the reasonable rates determined by the court above and the hours billed provided by plaintiff, which totals $23,580.

/////

---

[11]  The court also notes that the invoices submitted with the original attorneys' fee motion cover the time period up to June 13, 2018, but the invoices submitted with the supplemental briefing begin on June 1, 2018.  (*Compare* Doc. No. 99-3 at 147 with Doc. No. 106-1 at 3.)  However, upon review, the tasks billed on the two invoices are different and no duplicate invoices have been submitted.

| Supplemental Attorneys' Fee Briefing Invoices from June 1, 2018 to September 17, 2018 | | | |
|---|---|---|---|
| **Name and Years of Experience [12]** | **Applicable Rate** | **Hours Billed [13]** | **Total Billed** |
| Emily Feinstein Partner (17 years)) | $400/hour | 16.0 | $6,400.00 |
| Alissa Castaneda Partner (10 years) | $400/hour | 1.9 | $760.00 |
| Patrick Proctor-Brown Associate (3 years) | $250/hour | 56.0 | $14,000.00 |
| Xavier A. Santistevan Paralegal (25+ years of experience) | $200/hour | 12.1 | $2,420.00 |
| | **Supplemental Fees (subtotal)** | **86.0** | **$23,580.00** |
| | **Original Fees (subtotal)** | **1347.80** | **$408,130.00** |
| | **Total Attorneys' Fees** | **1433.80** | **$431,710.00** |

Thus, in total, the court has determined the lodestar amount to be $431,710.00, compared to plaintiff's requested amount of $478,555.50 in attorneys' fees.[14]

Once the court has calculated a lodestar, it "it shall consider whether the total award so calculated under all of the circumstances of the case is more than a reasonable amount and, if so, shall *reduce* the section 1717 award so that it is a reasonable figure." *PLCM Grp. v. Drexler*, 22

---

[12] The court notes that in calculating the requested supplemental attorneys' fees, it has omitted the time billed by Glenn Ross of Quarles & Brady. (*See* Doc. No. 106-1 at 4.) Ross billed a total of 1.80 hours in June 2018. (*Id.*) After reviewing both of the declarations submitted by attorney Emily M. Feinstein in support of the motion for attorneys' fees, costs, and interests (*see* Doc. Nos. 99, 106), the court could not find any information upon which to make a determination of an appropriate hourly rate for Ross. Therefore, his billed time was excluded from the total calculation.

[13] The information in this column is taken from attorney Emily M. Feinstein's supplemental declaration in support of the motion for attorneys' fees, costs, and interests. (*See* Doc. No. 106 at 5.) The supplemental declaration included invoices from Quarles & Brady to Firstsource with hours billed for its work starting on June 1, 2018.

[14] This figure is calculated by adding plaintiff's original request for attorneys' fees with its supplemental request for attorneys' fees. (*See* Doc. No. 106 at 7.)

Cal. 4th 1084, 1096 (2000) (emphasis added), *as modified* (June 2, 2000).  In adjusting the lodestar, "[t]he factors to be considered include the nature and difficulty of the litigation, the amount of money involved, the skill required and employed to handle the case, the attention given, the success or failure, and other circumstances in the case."  *EnPalm, LLC v. Teitler*, 162 Cal. App. 4th 770, 774 (2008) (citing *PLCM Grp.*, 22 Cal. at 1096).

Plaintiff has not directed the court's attention to any authority suggesting that it would be appropriate for the court to make an upward adjustment to the lodestar.  Defendant's arguments as to why the court should adjustment the lodestar amount downward in this case are unpersuasive and are overshadowed by defendant's prior actions in obstructing the progress of this litigation.  (*See* Doc. No. 93 at 6–13.)  Therefore, the court declines to make any adjustment to the lodestar in this case.

### 4.  Costs

Finally, plaintiff seeks to recover $30,862.31 for electronic discovery fees and $2,877.13 in additional costs.  (*See* Doc. Nos. 99 at 12–13; 106 at 7.)  Defendant contends that the costs sought should be reduced by $32,362.85 but fails to provide any basis or support for that position. (*See* Doc. No. 100 at 7.)

Here, the parties' contract provides that plaintiff may recover "all actual legal costs" which the court interprets to include electronic discovery fees and other miscellaneous costs necessarily incurred in the course of litigation.  The court has reviewed the records for the electronic discovery fees (Doc. No. 99-4) and the additional costs sought by plaintiff (Doc. No. 99-5) and finds them to be reasonably incurred.  Therefore, the court will also grant plaintiff's motion seeking the award of $30,862.31 for electronic discovery fees and $2,877.13 in additional litigation costs incurred, for a total of $33,739.44.

### 5.  Interest

The last issue the parties dispute is prejudgment interest on unpaid invoice amounts outstanding from July 21, 2015 through the date of the judgement on July 13, 2018.  (*See* Doc. No. 98-1 at 13.)  Defendant maintains that, pursuant to the parties' agreement, the prejudgment interest awarded should be simple interest, not compounded interest.  (Doc. Nos. 100 at 19–20;

107 at 14.) Plaintiff contends that the agreement contemplates compounded interest. (Doc. Nos. 102 at 9.) Both parties rely on the language of the agreement in support of their argument.

On this point, the agreement states as follows:

> Firstsource shall invoice Client on a monthly basis. All invoices are due and payable within thirty (30) days from invoice date. Client agrees to pay a service charge of one and one-half percent (1.5%) per month, or the legally permitted rate, whichever is less, on the balance not paid within thirty (30) days from invoice date.

(Doc. No. 1-1 at 2.) Defendant asserts that the agreement does not specifically state that the service charges should be compounded on a monthly basis. (Doc. No. 100 at 19–20.) Plaintiff argues that the monthly service charge is accrued on the "balance" not paid, and the balance includes both the amount of the invoices and any previously unpaid service charges. (Doc. No. 102 at 9.)

While the contract refers to these amounts as "service charges," courts analyze claims for these charges in the same way as for claims for prejudgment interest. *See Ramona Equip. Rentals, Inc. ex rel. U.S. v. Carolina Cas. Ins. Co.*, 755 F.3d 1063 (9th Cir. 2014) ("Accordingly, we affirm the district court's award of contractual prejudgment interest (service charges)."); *Pride of San Juan, Inc. v. Dible*, No. C 06-2032 SBA, 2006 WL 2850024, at *3 (N.D. Cal. Oct. 4, 2006) (using the terms "interest" and "service charge" interchangeably). Courts typically do not award compound interest unless the contract "clearly specif[ied] that the interest would be compounded." *U.S. ex rel. Ramona Equip. Rentals, Inc. v. Carolina Cas. Ins. Co.*, No. 08–CV–1685–H (MDD), 2011 WL 6934452, at *2 (S.D. Cal. Dec. 30, 2011); *see also Fitz Fresh, Inc. v. Mondragon*, No. C–08–02407 RMW, 2008 WL 4811457, at *2 (N.D. Cal. Nov. 5, 2008) ("[T]he interest charged is simple interest absent an explicit agreement by the parties to use compound interest."); *Salton Bay Marina, Inc. v. Imperial Irrigation Dist.*, 172 Cal. App. 3d 914, 961 (1985) ("As a general rule, compound interest is impermissible unless specifically authorized by statute or by stipulation of the parties."); *cf. Great Am. Ins. Co. v. Wexler Ins. Agency, Inc.*, No. CV 97–9397 MMM (BQRx), 2000 WL 36732271, at *3 (C.D. Cal. Apr. 19, 2000) (noting an exception to the rule in favor of simple interest where a breach of fiduciary duty "results in secret profit").

21

Here, the agreement does not specifically reference "compound" interest, but instead provides for a monthly 1.5 percent—or 18 percent annual—service fee on the invoice balance not paid after thirty days. (Doc. No. 1-1 at 2.) Because the parties' agreement does not clearly specify compound interest, the court will award simple interest on the unpaid invoice amounts in the amount of $380,302.00.

## CONCLUSION

Accordingly,

1.     Plaintiff's motion for attorneys' fees, costs, and interest is granted in part;

2.     The court awards $431,710.00 in attorneys' fees based on the lodestar analysis;

3.     The court awards total costs in the amount of $33,739.44; and

4.     The court awards $380,302.00 in simple prejudgment interest.

IT IS SO ORDERED.

Dated:   __**June 28, 2019**__                    _____
                                                                        UNITED STATES DISTRICT JUDGE